Marvin K. HAMMON, et al., Plaintiffs,

v.

Sharon Pratt KELLY, et al., Defendants.

Civ. A. Nos. 84–0903 (CRR),
85–0782 (CRR).

United States District Court,
District of Columbia.

Dec. 14, 1993.

Jeremiah A. Collins, George H. Cohen, Robert M. Weinberg, Jeremiah A. Collins

and Patricia Polach of Bredhoff & Kaiser, Washington, DC, for Byrne plaintiffs.

Joan A. Burt, Washington, DC, for Hammon plaintiffs.

George C. Valentine, Asst. Corp. Counsel, together with John Payton, Corp. Counsel, Robert Mallet, Principal Deputy Corp. Counsel, and Martin L. Grossman, Deputy Corp. Counsel, Washington, DC, for District of Columbia.

*MEMORANDUM OPINION OF CHARLES R. RICHEY UNITED STATES DISTRICT JUDGE*

CHARLES R. RICHEY, District Judge.

On September 1, 1993, the Defendants in the above-captioned case filed a Motion for Reconsideration of the Court's August 20, 1993 Order. In an effort to address this motion, the Court held a hearing on September 23, 1993. At that time, the parties were in agreement that the matter should be referred to Professor Stephen A. Saltzburg who has been serving as the Special Master in this case.

Having reviewed the Special Master's October 20, 1993 Report and Recommendations Regarding Demotions, the Byrne Plaintiffs' Statement of Position Respecting Special Master's October 20, 1993 Report and Recommendations, the Defendants' Statement of Position Respecting the Special Master's October 20, 1993 Report and Recommendations, the Byrne Plaintiffs' Response to Defendants' Statement of Position Respecting the Special Master's October 20, 1993 Report and Recommendation, the Special Master's Addendum to October 20, 1993 Report and Recommendations Regarding Demotions, the Defendants' Supplemental Statement of Position Respecting the Special Master's October 20, 1993 Report and Recommendation, and the entire record herein, the Court has decided to grant the Defendant's Motion for Reconsideration of its August 20, 1993 Order and to modify its previous Order in accordance with the Recommendation and Report of the Special Master.

1. *See* this Court's August 20, 1993 Opinion.

## I. BACKGROUND

As all of the parties familiar with this case are aware, the protracted history of this complex litigation has been marked by a series of fractious battles on all sides. The details of this struggle have been recounted many times [1], but for purposes of clarity, the Court will briefly review the primary incidents leading up to the filing of the Defendants' September 1, 1993 Motion For Reconsideration of the Court's August 20, 1993 Order.

This lawsuit began as a class action with the filing of *Hammon v. Barry*, Civil Action No. 84–903 on March 22, 1984. The Plaintiff class consisted of a group of African–American firefighters seeking to enforce an order of the District of Columbia Office of Human Rights, which instructed the District of Columbia Fire Department, ("the Department") to, *inter alia*, adopt an affirmative action plan. On March 8, 1985, a group of white firefighters and their union challenged implementation of this plan in *Byrne v. Coleman*, Civil Action No. 85–0872. The plan was also challenged by the United States in *United States v. District of Columbia*, Civil Action No. 85–797. The cases were then consolidated by the District Court in 1985.

Over the course of the five year period from 1985 through 1990, both the District Court and the Court of Appeals were heavily involved in the resolution of numerous aspects of this dispute. In 1985, the District court held that the promotional procedures in the affirmative action plan were unlawful, but that the hiring procedures were lawful. *Hammon v. Barry*, 606 F.Supp. 1082 (D.D.C. 1985). The Court of Appeals then reviewed the hiring portion of the affirmative action plan on appeal, and reversed this Court's decision after substantial consideration. *Hammon v. Barry*, 813 F.2d 412 (D.C.Cir. 1987), *reh'g denied*, 826 F.2d 73 (D.C.Cir. 1987), *reh'g en banc granted*, 833 F.2d 367 (D.C.Cir.1987) (per curiam), *order granting rehearing en banc vacated*, 841 F.2d 426 (D.C.Cir.1988) (per curiam), *cert. denied*, 486 U.S. 1036, 108 S.Ct. 2023, 100 L.Ed.2d 610 (1988). In 1988, upon remand by the Court of Appeals, the District Court again endeav-

ored to resolve all of the remaining issues in this case.

Two years later, in 1990, the parties all agreed to refer the case to a Special Master for purposes of settlement. Eventually, as a result of concerted efforts by the Court and the Special Master, Professor Stephen A. Saltzburg, working in conjunction with counsel, a settlement acceptable to all of the parties was finally reached.

On August 20, 1990, a settlement agreement was entered which provided, *inter alia*, for a fund of $3.5 million to be distributed to members of the Hammon class. In addition, the settlement agreement also provided for the establishment of a method by which future promotions were to be made in the Department. The provisions with respect to these promotions are now at the heart of some of the disputes currently before the Court.

Specifically, the settlement agreement provided for two rounds of promotional examinations—designed in large part to compensate for the fact that no promotions had been made in the Department since the lawsuit began in 1984, a period of over six years. The first promotional examination was intended to fill vacancies that arose during the period from March 1, 1989 through June 1, 1991. The second exam was to fill vacancies arising during the period from June 2, 1991 through June 1, 1993.[2] The agreement was then incorporated into a consent decree that was signed by counsel for the District and for the Byrne Plaintiffs and approved by the undersigned Judge after a fairness hearing held on November 6, 1990. *See Hammon v. Barry*, 752 F.Supp. 1087 (D.D.C.1990). As the Court noted in its Order of August 20, 1993, however, the settlement agreement and consent decree were unfortunately not successful in putting an end to all of the disputes in this case.[3]

Most recently, disagreement among the parties has focused on the proper interpretation of the settlement agreement provisions relating to the establishment of new promotional opportunities within the Department. The question that has arisen concerns how long the promotions made pursuant to the settlement agreement must remain in effect in order for the City to fulfill its obligations under the terms of the settlement.

More specifically, the instant controversy initially arose this past summer when the City first announced its intention to implement a set of demotions within the District's Fire Department.[4] Claiming that such demotions would violate the settlement agreement and consent decree, the Byrne Plaintiffs filed a Motion to Enforce the Settlement Decree on August 12, 1993. On August 20, 1993, this Court issued an Order granting the Byrne Plaintiff's Motion and enjoining the

---

2. It should further be noted that the agreement also contained a list of individuals who were to fill all vacancies as of March 1, 1989. For a copy of the agreement, see *Hammon v. Barry*, 752 F.Supp. 1087 (D.D.C.1990) at pages 1102–1107.

3. Shortly thereafter, an appeal was taken by some of the firefighters whose claims the District Court had rejected; and the Court of Appeals for the District of Columbia Circuit affirmed the District Court's Decree and Order in 1991. *Hammon v. Dixon*, 946 F.2d 1564 (D.C.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992). Other challenges to this Court's Orders have also been considered and rejected by the Court of Appeals. *See In re Marvin K. Hammon, et al.*, 1992 WL 34160 (D.C.Cir. Feb. 14, 1992), *reconsideration denied*, No. 92–5036 (D.C.Cir. Apr. 8, 1992); *Hammon v. Kelly*, 980 F.2d 785 (D.C.Cir.1992) (per curiam).

4. The early procedural history of this aspect of the case was fairly complex as a result of the uncertainty surrounding the City's intentions with regard to the proposed demotions. On July 9, 1993, counsel for the Byrne Plaintiffs sought to stay the impending set of demotions within the Fire Department, which were then scheduled to take effect on August 6, 1993. On July 22, 1993, however, the parties informed the Court that the District of Columbia Council had passed a budget that did not include the anticipated demotions, thereby obviating the need for a stay. Counsel therefore filed a Stipulation and Withdrawal of the Byrne Plaintiffs' Motion on the grounds that actions taken by the District of Columbia rendered the pending motion moot. On August 9, 1993, however, Mayor Sharon Pratt Kelly announced that the planned demotions would still go forward, notwithstanding the action of the D.C. Council. In response to an announcement that the demotions would take effect on August 20, 1993, the Byrne Plaintiffs filed a new Motion to Enforce the Settlement Decree on August 12, 1993. It was in response to this Motion that the Court issued its Order of August 20, 1993.

District from demoting, without cause, those firefighters originally promoted pursuant to the terms of the settlement agreement and consent decree approved by the Court on November 6, 1990. The Court's Order held that the City was to be so enjoined for a period of six years from the date the Consent Decree was approved by the Court, November 6, 1990.

In issuing its August 20, 1990 Order, this Court was faced with the difficult task of determining what would constitute a reasonable duration during which the promotions made pursuant to the settlement agreement ought to remain intact. There was little dispute as to the applicable legal standard governing the Court's determination, namely that the Court should construe the agreement to require a reasonable period of performance, in the absence of an explicit provision relating thereto. The sole question facing the Court was precisely what time period would constitute a reasonable period of performance in keeping with the "spirit and intention" of the consent decree. Accordingly, the Court selected a term of six years in light of the fact that, at the time the settlement agreement was reached and the consent decree was signed in 1990, the firefighters in the District had gone without promotions since 1984, a period of six years.

Upon receipt of the Court's August 20, 1993 Order, however, the City immediately filed a Motion for Reconsideration, or, in the alternative, for Modification of the Court's Injunction. The primary basis for the Defendant's Motion was the City's claim that the Court's Order constituted a "windfall" for the Plaintiffs (and was unduly harsh to the City) by enjoining demotions for a full six years. In an effort to address this Motion, the Court then held a hearing on September 23, 1993. At that time, counsel for both the City and the Byrne Plaintiffs agreed that the matter should be referred to Special Master Professor Stephen A. Saltzburg who subsequently held a hearing on this issue on October 7, 1993.[5]

After carefully reviewing the submissions of both sides, the Special Master issued a Report and Recommendation on October 20, 1993. Both parties then filed Statements of Position Respecting the Special Master's Report. The Byrne Plaintiffs also filed a Response to the Defendants' Statement of Position, the Special Master subsequently issued an Addendum to his earlier Report and Recommendation, and the Defendants filed a Supplemental Statement of Position. The Court thus has before it all of the above submissions as well as the parties' original filings in this matter.

## II. DISCUSSION

As the Special Master noted in his report, the parties have not challenged the Court's reasoning in concluding that the "construction of a consent decree is essentially a matter of contract law...." *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1125 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984). As such, the consent decree must be construed "within its four corners" *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). However, in seeking a proper interpretation, a Court may examine all of the circumstances surrounding the formation of the settlement agreement and the signing of the consent decree. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975).

Accordingly, in issuing its Order of August 20, 1993, the Court sought to ascertain, to

---

5. The Special Master has indicated that counsel for both the City and the Byrne Plaintiffs were present at this hearing. Although Counsel for the Hammon Plaintiffs had apparently been notified of the hearing and had indicated her intention to appear, the Special Master notes that she did not in fact attend. The Special Master's Report indicates that he received a telephone call from Counsel for the Hammon Plaintiffs less than three hours prior to the hearing informing him of her belief that there was nothing that could be done at the status conference in light of the appeals that she had filed in the Court of Appeals and further noting that, even if there were, she could not attend. The Special Master and counsel for the City and the Byrne Plaintiffs agreed that there could be no proper appeal from the Court's Order referring the matter to the Special Master for a recommendation as it did not constitute a final order. The parties then proceeded to establish a briefing schedule to govern their submissions before the Special Master. *See* Special Master's October 20, 1993 Report at 1.

the extent possible, the intent of parties at the time the settlement agreement was signed. In making its determination, the Court relied heavily upon the fact that the Byrne Plaintiffs had signed the settlement agreement because of the compromise reached with respect to the promotions.[6] Thus, recognizing that the Byrne Plaintiffs had been denied promotional opportunities for the six year period during which the *Hammon* litigation had been pending, the Court concluded that six years constituted a reasonable period of time within which to require that the District refrain from undertaking demotions that would render the promotional provisions of the settlement agreement meaningless.

In filing its Motion for Reconsideration, the City has primarily argued that the Court erred in selecting a term of six years and thereby inadvertently granted a huge "windfall" to the Byrne Plaintiffs—many of whom were not deprived of promotions for a full six years. The City urges the Court to recognize that many of the Byrne Plaintiffs were not eligible for promotions in 1984 and therefore should not receive the benefit of six years of protection. Most powerfully, perhaps, the City notes that seventeen firefighters who were promoted to the rank of sergeant pursuant to the settlement agreement would otherwise not have been eligible for promotion to that rank until 1992. Therefore, far from being disadvantaged by the *Hammon* litigation, these individuals actually received the benefit of enhanced promotional opportunities as a result of the settlement agreement and consent decree.[7] Accordingly, the City urges the Court to reconsider its Order and recognize that a six year ban on demotions is not a reasonable interpretation of what was contemplated by the Parties at the time the settlement agreement was reached.

Instead, the City has proposed an alternative method by which to determine when the Department should be free to demote those firefighters promoted pursuant to the terms of the settlement. Essentially, the City has suggested that an individualized determination be made as to how much delay each firefighter actually suffered as a result of the Department's failure to make any promotions from 1984 to 1990. The City claims that such case-by-case determinations should control how long the Department must retain a given firefighter in his/her current position before the City is free to make individual demotions without violating its obligations under the settlement agreement and consent decree. By providing the "Entry on Duty" (EOD) date for each firefighter, the City argues that this person-by-person approach to demotions is both administratively feasible and logically desirable. As such, the District seeks to persuade the Court to accept this method by emphasizing that it avoids granting a "windfall" to the Byrne Plaintiffs while enabling the City to make necessary budgetary cuts without violating the spirit or the intent of the settlement agreement.

**A.** *The City should not be permitted to make case-by-case determinations as to how long individual firefighters must be retained in the positions to which they were promoted pursuant to the Settlement Agreement as to do so would be inconsistent with the spirit and intent of the Settlement Agreement and Consent Decree.*

The Court, however, agrees with the Byrne Plaintiffs and the Special Master, who both reject the District's contention that individualized determinations should govern the resolution of this matter. As a general principle, compromises reached in settlement negotiations of the sort involved in this case are inherently likely to entail categorizations that

---

6. As the Court noted in its August 20, 1993 Order: "[T]he morale of the Department and the safety of the City ..." were best served by both the Byrne Plaintiffs and the District agreeing to a mutually acceptable method for filling the vacancies within the Department. *See 'Hammon v. Barry,* 752 F.Supp. 1087, 1122 (D.D.C.1990). In exchange for these provisions, the Byrne Plaintiffs "waive[d] any and all claims to further relief...." *Id.* at 1110.

7. The Special Master's Report also indicates that a number of other firefighters promoted pursuant to the settlement agreement are similarly situated with respect to this issue, i.e. having received promotional advancements as a result of the settlement—or at least not having experienced a full six years of delays.

tend to lump differently situated individuals together and treat them all in the same manner. As such, it is not surprising that some members of the Byrne Plaintiff class may seem to have received more of a benefit from the settlement than others—especially when viewed from the perspective of each firefighter's individual entitlement to relief awarded to the class as a whole. Accordingly, then, just as the City can identify individual firefighters who appear to have received "too much" or more than they deserve from the Court's interpretation of the Settlement Agreement, the Byrne Plaintiffs can make an equally compelling argument that other firefighters may have received "too little" or less than they deserve from the Settlement and the Court's Order of August 20, 1993.

Moreover, the Special Master's Report also offers evidence that both parties were conscious of this facet of the settlement agreement at the time it was signed. In other words, the parties recognized that under the settlement agreement, the same promotional opportunities were being awarded to the "group" as a whole, despite the vastly differing eligibility of various class members. As the Special Master's Report indicates, "the parties were careful in their agreement not to distinguish among firefighters" as "[t]his was a principle upon which the Byrne plaintiffs insisted." *See* Report at 7. Consequently, when the settlement agreement was signed, the parties were all aware that it was likely that many of those promoted pursuant to the back-to-back round of tests would not necessarily have been eligible for promotions as early as 1984. The Court therefore finds that to permit the City to undertake demotions on an individual case-by-case basis would be inconsistent with the spirit and intent of the settlement agreement.

Having thus concluded that the Settlement Agreement requires that the firefighters promoted pursuant to the back-to-back promotional tests must be given the same degree of protection regardless of their individual Entry-on-Duty dates, the Court must address the question of whether six years

constitutes the proper length of time during which to enforce the promotional provisions of the Settlement Agreement.

**B.** *Although six years may constitute a reasonable period of performance under the terms of the Settlement Agreement, requiring the City to refrain from making any demotions for a period of four years represents a better estimate of what the parties most likely contemplated at the time the Settlement Agreement was signed.*

After reviewing the Special Master's Report and the parties' respective Statements of Position, the Court has decided to adopt the recommendation of the Special Master and modify its Order of August 20, 1993. As such, the City shall be enjoined from demoting, without cause, those firefighters who were originally promoted pursuant to the terms of the settlement agreement and consent decree until September 1, 1994.

Before turning to the reasons for the Court's determination, however, it is important to reiterate the limited scope of the Court's holding in ruling upon this issue. As the Court's Order of August 20, 1993 made clear, the Court is not evaluating the District's budgetary process nor should this ruling be interpreted as a judgment on the wisdom of undertaking demotions within the D.C. Fire Department. Similarly, the Court's decision is not based on the likely effect of the planned demotions or upon a determination as to whether such a reduction in force would actually result in the savings projected by the District government.[8] The sole issue before the Court concerns the extent of the obligations assumed by the District in signing the settlement agreement and consent decree in 1990.

In addressing this question, the Court's August 20, 1993 Order took note of the fact that the consent decree was designed to increase "the opportunities for *all* long-suffering firefighters to take promotional tests quickly to make up for the absence of promotional tests during the last six years."

---

**8.** For these reasons, the Court shall not address those portions of the Defendants' argument which concern the financial constraints that the Court's Order allegedly imposes upon the City.

Similarly, that portion of the Byrne Plaintiff's argument which challenges the City's projected cost savings is equally irrelevant to the question facing the Court.

*Hammon v. Barry,* 752 F.Supp. 1087, 1098 (D.D.C.1990). While still cognizant of the fact that a six-year delay in promotions formed the backdrop against which the settlement was negotiated, the Special Master's Report has convinced the Court that a period of four years constitutes a more reasonable duration for the enforcement of the consent decree in light of what the parties most likely contemplated at the time the settlement agreement was signed.

**C. Four years is a reasonable interpretation of what the parties may have contemplated in providing for two rounds of promotional tests because the Fire Department's routine procedure was to offer promotional exams every two years and then to use the registers generated by those exams to fill all vacancies for the next two years. As such, it is reasonable to assume that two rounds of tests were intended to cover a period of four years.**

■ The Special Master's Recommendation is predicated upon a simple analysis of the Fire Department's routine promotional procedures—the details of which must have been known to all parties at the time the settlement agreement was negotiated. As a general matter, the Fire Department offers promotional examinations every two years, and each set of exams can then be used to generate promotional registers designed to fill vacancies for a two year period. *See* Special Master's October 20, 1993 Report at 8. As such, "in a settlement agreement calling for two tests to be given, it is fair to conclude both that the parties contemplated two tests and that two tests generally cover a four year period of promotions." *Id.* at 8.

The Special Master's Report also offers further support for the conclusion that four years constitutes a reasonable period of performance with regard to the City's obligation to maintain the promotions granted pursuant to the Settlement Agreement. As Professor Saltzburg points out, the parties explicitly agreed that the promotional registers generated as a result of the back-to-back tests were designed to fill vacancies arising during the four year period from March 1, 1989 through June 1, 1993. This thus "suggests that the parties concluded that two examinations were appropriate to generate registers covering four years of promotions." The Special Master therefore goes on to reason that it is thus "also reasonable to conclude that the settlement agreement, once approved by the Court, would have a similar life, *i.e.,* four years, given the reasonable expectation of the parties that the promotional opportunities were to be genuine and as secure as the $3.5 million placed in the Hammon fund." [9] *Id.* at 8–9.

Under the circumstances of this case, the Court finds this reasoning highly persuasive. While the Court recognizes that there is no necessary connection between the two-year life of each promotional register and the duration of an actual promotion, the Court finds the Special Master's approach to this problem to be both reasonable and fair. Unfortunately, it is not possible for the Court or the Special Master to ascertain the precise or "proper" duration of a promotion. Nor, however, are the parties capable of making such a determination. As such, the Court finds that the solution proposed by the Special Master is the most equitable construction of the Consent Decree possible given these circumstances.[10] Accordingly, the Court here-

---

**9.** As the Court's Order of August 20, 1993 made clear, fundamental fairness requires that the City treat its obligation to provide promotional opportunities with as much respect as it accords its responsibility to pay the money owed to the settlement fund. *See* Court's Order of August 20, 1993 at 13.

**10.** With respect to the question of when this four year term commences and ends, the Court takes note of the following points. First, there is no question that the parties clearly contemplated that some of the promotions made pursuant to the settlement agreement might not occur until as late as May 31, 1993 as the second register

was designed to cover vacancies arising until June 1, 1993. As Professor Saltzburg suggests, then, "[i]t is inconceivable that, in view of the expectations that these were to be real promotions, the parties would have presumed that a person could be promoted and demoted in the same year." *See* Special Master's Report at 9.

However, the Special Master also notes that "[a]t the time of the settlement, it was conceivable to all parties that the City might resume its even year testing in 1994 to create registers that would be used to fill vacancies that arose after June 1, 1993 and that will continue to arise in the future. It is not unfair to conclude that the

by adopts the Recommendation of the Special Master and modifies its August 20, 1993 Order, such that the City shall be prohibited from demoting firefighters promoted under the Settlement and Consent Decree until September 1, 1994.

In addition to the Motion for Reconsideration, the Court is also faced with two other matters pertaining to the promotions made pursuant to the Settlement Agreement and Consent Decree. The first concerns the issue of retroactive pay addressed by the Special Master in a Recommendation filed on December 3, 1992. The second issue concerns the City's obligations to fill vacancies in the Fourth Platoon and was also dealt with by Professor Saltzburg in the December 3, 1992 Report, in which the Special Master recommended as follows:

Firefighters who are members of both the Byrne and Hammon classes have a right to retroactive pay beginning with the date on which they would have been promoted had the August 1, 1991 promotional registers not been delayed. In addition, the city was obliged to obliged to [sic] establish 24 new Sergeant positions, 56 new Lieutenant positions, and 9 new Captain positions as part of a fourth platoon, and remains obliged to fill any vacancies in these new positions or in old positions from June 1, 1991 until June 1, 1993 using the fully retroactive August 1, 1991 promotional registers.

Having carefully reviewed the extensive submissions before the Court on these issues, including the Special Master's Report to the Court Regarding Byrne Plaintiffs' Motion to Enforce the Settlement Decree (December 3, 1992 Report), the Addendum to Special Master's Report to the Court Regarding Byrne Plaintiffs' Motion to Enforce Settlement Decree (December 7, 1992 Addendum), the

parties understood that in 1994 the promotional process would return to its pre-settlement state." *See* Special Master's October 20, 1993 Report at 10. The Special Master's Report thus recommends that the Court amend its order and enjoin the City from making these demotions for a period of four years beginning on September 1, 1990, the approximate date by which the settlement agreement was signed and ratified by the Byrne and Hammon plaintiffs and the Court was informed of the ratification.

Byrne Plaintiffs' Motion for Expedited Adoption of Special Master's Report to the Court Regarding Motion to Enforce Settlement Decree, with Points and Authorities (Byrne Plaintiffs' January 7, 1993 Motion), the Joint Report Regarding Status of Byrne Plaintiffs' Motion to Enforce Settlement Decree (Joint Report), the Defendants' Objections to the Recommendations of the Special Master on the Byrne Plaintiffs' Motion to Enforce Settlement Decree and Related Orders (Defendants' Objections), the Byrne Plaintiffs' Response to Defendants' Objections to the Recommendations of the Special Master on the Byrne Plaintiffs' Motion to Enforce Settlement Decree and Related Orders, and all of the submissions before the Court in connection with the Special Master's October 20, 1993 Report, the Court has decided to adopt the Special Master's Recommendations with respect to these two issues as well.

**D.** *Firefighters promoted pursuant to the second round of promotional tests provided for by the Settlement Agreement have a right to retroactive pay beginning with the dates on which they would have been promoted had the August 1, 1991 promotional registers not been delayed.*

█ The "retroactivity" issue, as it has become known to those involved with this case, arose as a result of a dispute that erupted prior to the administration of the second round of promotional tests. Questions as to which firefighters would be eligible to take the second set of tests ultimately delayed development of the August 1, 1991 promotional register. The instant dispute thus concerns whether promotions eventually made pursuant to the August 1, 1991 register ought to be fully retroactive for all purposes including backpay.

Finally, the Court also notes that the Defendants' original request to the Court asked that the City be permitted to begin making demotions in one year. Although the District has now altered this request, the Court notes that an injunction against demotions until September 1, 1994 is consistent with the City's previous position in seeking a modification of the Court's August 20, 1993 Order.

Neither side disputes the notion that the original intent of the parties under the Settlement Agreement was to have the second register issued by August 1, 1991. Indeed, as the Defendants themselves noted in filing their Objections to the Recommendations of the Special Master on April 6, 1993, "there is no doubt that the original intent of the parties was to have the register from the second round of promotional examinations issued by August 1, 1991." *See* Defendants' Objections at 4. The question thus presented is what effect the resulting delay should have on the obligations initially incurred by the Department.

The City has claimed that because "none of the parties anticipated the problems [which] developed during the examination process," a reassessment of the deadline was necessitated. *Id.* at 5. The Defendants thus argue that although they requested the extension pending the resolution of the eligibility dispute, they did not agree to compensate the *Byrne* Plaintiffs for the delay.[11] *Id.* at 5. As such, the City suggests that to award backpay to those firefighters whose promotions were delayed due to the emergence of this unanticipated legal dispute would somehow impose an unfair "penalty" on the City and unjustly bestow a "windfall" upon the Plaintiffs—at the Defendants' expense.

The Court, however, finds no merit to this argument. As the Defendants themselves agree, "as a matter of equity ... the firefighters (both white and African–American) should not be prejudiced from any delays in releasing the August 1st registers." *See* Defendants' Objections at 6. Consequently, the

mere fact that the delays were not the result of blameworthy action by the Defendants does not mean that the Plaintiffs are no longer entitled to that which they would otherwise have received had there not been delays in administering the second set of tests. The Defendant is correct in claiming that the City should not be penalized for the delay, but there is absolutely no basis for concluding that a requirement of retroactive pay constitutes a penalty. Rather, the issuance of retroactive pay back to those dates when firefighters would otherwise have been promoted merely ensures that the City will fulfill those obligations initially undertaken in signing the settlement agreement and consent decree.

Indeed, the whole purpose of the Special Master's recommendation is simply to ensure that both sides end up in positions that are as close as to possible to those they would have been in had it not been for the unanticipated delay in developing the August 1, 1991 register. By requiring the City to award retroactive pay dating back to the dates when firefighters would have been promoted had there been no delay in the issuance of the second register, the Court is confident that neither side will be substantially better or worse off than the parties were likely to have contemplated at the time the settlement was reached.[12]

In reaching this decision, the Court takes note of the fact that there are no allegations that the delay imposed any additional hardship on the Defendants. In fact, in many respects the City seems to have benefitted

---

11. As is demonstrated below, however, the Defendants' claim that they never agreed to "compensate" the *Byrne* Plaintiffs in exchange for an extension of time within which to issue the August 1, 1991 register, mischaracterizes the situation. As the Special Master points out, the Defendants were granted an extension on the understanding that no one would be prejudiced by the resulting delay. The Court is inclined to agree with the Special Master that this understanding implicitly encompassed such issues as retroactive pay. However, even assuming arguendo that there was no such agreement among the parties, it is misleading for the Defendant to characterize its back pay obligations as *compensation* for the extension. An award of retroactive pay would merely represent an attempt to satisfy the requirements of full performance, in spite of

the necessity for an extension—and not, as the Defendants have suggested, some form of consideration for a new bargain.

12. The Court is unpersuaded by the Defendants' argument that it would be unfair to impose a financial obligation on the Government when "release of the registers on August 1st would have been an impossibility". *See* Defendants' Objections at 7. The fact that the City was not at fault in delaying the issuance of the registers may suggest that it would be unfair to impose an additional obligation or penalty on the Defendants—but merely requiring the Department to pay that which it would have owed but for the delay is simply to insist that the District act in accordance with its initial obligations.

from the willingness of those involved to be flexible in fashioning a reasonable solution to the problems posed by the eligibility dispute. As such, the Court has no qualms about requiring the City to fully comply with the original terms of the settlement with regard to this issue. To hold otherwise would be to permit unforeseen occurrences to benefit one side while working to the detriment of the other.[13]

In short, the Court finds the Special Master's recommendation with respect to this issue to be perfectly appropriate under the circumstances of this case. Accordingly, the Court holds that those firefighters promoted pursuant to the second promotional register are eligible for retroactive pay dating back to the dates on which these individuals would have been promoted had the register been announced on August 1, 1991.[14]

**E.  *The City also remains obligated to fill all vacancies, including those in the fourth platoon, arising during the period from June 1, 1991 through June 1, 1993, using the fully retroactive August 1, 1991 promotional registers.***

██ The second related issue addressed by the Special Master in his October 20, 1993 Report concerns the elimination of certain positions within the Fourth Platoon. Under the terms of the Settlement Agreement, the Department was obligated to institute a fourth platoon by June 1, 1991. *See* Special Master's December 3, 1992 Report to the

Court. The purpose of this provision was to establish additional promotional opportunities by creating 24 new Sergeant positions, 56 new Lieutenant positions, and 9 new Captain positions. These slots were then to be filled from the August 1, 1991 promotional registers. Not all of the spots have been filled, though, and the Department has sought to eliminate some of these positions. The parties have thus asked the Court to rule upon the District's obligations with respect to these positions.

Upon careful review of all of the relevant submissions, the Court has decided to adopt the Special Master's finding that the City remains obligated to fully staff the fourth platoon using the Second Promotional Register.

In various filings, the City has sought to convince the Court that its obligations under the Settlement Agreement were limited to the administration of two promotional examinations. As the Special Master's Report and Recommendations suggest, however, the adoption of this narrow interpretation of the Department's responsibilities under the Consent Decree would fundamentally undermine one of the primary objectives of the settlement.

Indeed, one of the key elements of the agreement reached by the parties included a guarantee that future promotional *opportunities* would be made available within the Department on a nondiscriminatory basis.[15]

---

13. As has been noted before with respect to this case, fundamental fairness to all concerned requires that the Court treat the promotional provisions of the settlement agreement in the same manner as the monetary provisions. There is no question that a delay in the transfer of funds, even if due to unforeseen circumstances, would not relieve the parties of the obligation to ultimately pay the full amount owed. Similarly, a delay in the announcement of the promotional register should not be permitted to alter the nature or extent of the promotional benefits accruing to the Plaintiffs.

14. The parties at various times have indicated to the Court that the determination of these individual dates should be fairly simple to accomplish. The Court thus hopes that this task can be accomplished amicably among counsel for both sides and relies on the Defendants' representations that the "parties have agreed that once the court has ruled on this issue to sit down in good

faith to resolve this issue." Defendants' Objections at 6. Should this prove not to be the case, the Court shall rely upon the Special Master's representation that he is prepared to make recommendations to the Court as to the dates that should be used. *See* Special Master's Report to the Court Regarding Byrne Plaintiffs' Motion to Enforce Settlement Decree at 4.

15. *See* Special Master's Report to the Court Regarding Byrne Plaintiffs' Motion to Enforce Settlement Decree, December 3, 1992, at 7, noting that the City's "reading [of the settlement] would fly in the face of the explicit statement in Paragraph 4 of Part of B that '[o]ne fundamental goal of this agreement is to enable firefighters who have waited for promotion longer than any party to this case would have wished to be promoted without further delay and *to assure that future promotional opportunities will be available* on a nondiscriminatory basis *as soon as possible,* and

The development of two sets of promotional registers clearly constitutes one aspect of this guarantee, but there is no question that the administration of these tests alone cannot constitute the full extent of the City's obligations with respect to this issue. If the Department were permitted to eliminate all positions as soon as they became vacant, the mere existence of the promotional registers would be rendered worthless. The settlement guarantee of meaningful promotional opportunities thus precludes the Department from simply eliminating newly vacant positions rather than utilizing the registers to make new promotions.[16]

As such, the Court is persuaded by the Special Master's Recommendation that the City remains obligated to fill all vacancies, in both new and old positions, arising between June 1, 1991 and June 1, 1993 using the August 1, 1991 promotional register. As discussed above, this obligation shall remain intact until September 1, 1994 and all promotions made from the second promotional register shall entitle recipients to retroactive pay dating back to the dates on which they would have been promoted had it not been for the delay in issuance of this register.[17]

Finally, for purposes of clarity, the Court also takes this opportunity to articulate some of the limits entailed in its ruling on this issue. For instance, the decision as to whether or how to fill any vacancies arising after June 1, 1993 is a matter not covered by the Settlement Agreement and Consent Decree and the Court thus issues no ruling with respect to the disposition of such positions. Similarly, the Court also agrees with the Special Master's conclusion that the City remains "free, at least as far as the Court is concerned, to demote anyone promoted to other ranks independent of the settlement and the Court's Decree and Order." [18] *See* Special Master's Addendum to October 20, 1993 Report and Recommendations Regarding Demotions at 3. Finally, with respect to the issue of vacancies that remain after the promotional registers have been exhausted, the Court notes that the City is not required to offer a special examination to help fill such positions.[19] Although nothing would prevent the Department from doing so, should they so choose, nothing in the settlement agreement requires the District to undertake this additional obligation.[20]

In short, the Court's holding today requires that the City fill all vacancies arising between June 1, 1991 and June 1, 1993, including those within the fourth platoon, using the fully retroactive August 1, 1991 promotional registers.[21] The City is under no obligation, however, to fill any vacancies

that dual and expedited promotions will exist.' (Emphasis added)".

16. As the Special Master's analysis makes clear, permitting the Department to eliminate positions once they become vacant would undermine the entire value of the settlement. The purpose of the promotional provisions was to provide *opportunities* for promotions. The administration of promotional exams alone would be worth nothing to eligible firefighters if there were no positions into which they could then be promoted.

17. As the Byrne Plaintiffs have noted, there is absolutely no merit to the City's claim that promotions to the fourth platoon should not be mandated because the individuals so promoted will likely be the first to be demoted once the conditions of the settlement agreement expire. Even if this proves true, (and the Court is not convinced that this is in fact the case), to adopt this position would be tantamount to rewarding the City for having failed to fully comply with the Consent Decree in a timely manner. The Special Master and the Court have endeavored to resolve these issues as expeditiously as possible and will continue to do everything in their power to minimize the extent of any adverse consequences associated with the necessary passage of time as these issues are being resolved.

18. As such, the City retains discretion to make certain demotions. For example, the ban does not cover those members of the Department serving in ranks above that of Captain.

19. This holding primarily affects the question of the City's obligations to fill lieutenant positions in the Fourth Platoon now that the promotional registers have been exhausted as to that rank.

20. With respect to this issue, the Court notes with appreciation the Byrne Plaintiffs' willingness to respect the recommendation of the Special Master as having been "fully and fairly considered" even to the extent that his rulings were adverse to their positions.

21. Such promotions will of course be accorded the same protections as all of those made pursuant to the Settlement Agreement and Consent Decree as provided for above.

arising after June 1, 1993. Nor is the City required by the Settlement to refrain from demoting those firefighters whose promotions were independent of the Settlement. Lastly, the City is also under no Court mandate to fill vacancies as to which the registers generated by the settlement have already been exhausted.

## VI. *CONCLUSION*

For all of the foregoing reasons, the Court has decided to modify its August 20, 1993 Order in accordance with the recommendations of the Special Master. As such, the City shall be prohibited from implementing demotions as to those firefighters promoted pursuant to the Settlement Agreement and Consent Decree until September 1, 1994. The City also remains obligated to fully comply with its other obligations under the settlement. Toward that end, the City is required to make the August 1, 1991 promotional registers fully retroactive, for all purposes including backpay. Finally, the City is also obliged to fill all vacancies, including those within the fourth platoon, that arose between June 1, 1991 and June 1, 1993, from the fully retroactive August 1, 1991 promotional registers. The Court thus adopts the Recommendation and Report of the Special Master and shall issue an order of even date herewith consistent with the foregoing opinion.

