# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:        **February 10, 2015**

**NO. 31,935**

**LENARD NOICE II, as**
**Personal Representative for**
**LENARD E. NOICE, Decedent,**

  Plaintiff-Appellant,

v.

**BNSF RAILWAY COMPANY,**
**a Delaware corporation,**

  Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Long, Pound & Komer, P.A.
Mark E. Komer
Santa Fe, NM

for Appellant

Atkinson, Thal & Baker, P.C.
John S. Thal
Elizabeth Losee
Juan M. Marquez
Albuquerque, NM

for Appellee

**OPINION**

**KENNEDY, Judge.**

{1}    When a railroad employee's negligence claim against his employer railroad under the Federal Employers Liability Act (FELA) is based solely on allegations of excessive speed, we conclude that claim is not precluded under the Federal Railroad Safety Act (FRSA). A locomotive engineer disappeared from a train while the conductor was speeding up, but the train was still within the speed regulations prescribed under FRSA. He was later found dead beside the track. His representative sued his employer railroad for negligence under FELA. We are persuaded by other jurisdictions that have considered the issue that FRSA speed regulations cannot preclude a speed-based negligence claim under FELA. We reverse the district court's grant of summary judgment to the railroad.

**I.    BACKGROUND**

{2}    Lenard Noice (Decedent) worked as a locomotive engineer for BNSF Railway Company (BNSF). Decedent was operating locomotives on a trip to Belen, New Mexico, along with the conductor, John Royal. The train was traveling between fifteen and twenty miles per hour when Decedent told Royal to take control of the train. Decedent told Royal to "start pulling on it," and Royal began gradually increasing the train's speed. Decedent exited the locomotive and walked along the

outside of the train to the next locomotives. The train's speed reached fifty-five miles per hour. Royal became aware at some point that he could not see Decedent. After repeated attempts to contact Decedent by ringing a bell, Royal slowed and stopped the train to search for him. Decedent was later discovered by another train near the tracks. He had apparently fallen off the train and perished from his injuries. A video revealed that Decedent had disappeared from the second locomotive walkway.

{3}     Decedent's son, Lenard Noice II, sued BNSF for negligence in violation of FELA, as well as for strict liability and spoliation of evidence. BNSF moved for partial summary judgment on the FELA negligence count, which is the basis for this appeal. BNSF argued that Noice had failed to prove a breach of duty or causation of Decedent's injuries and that Decedent was negligent. Noice responded. Before filing its reply brief, BNSF filed a motion in limine, asking the district court, among other matters, to prohibit Noice from asserting that the train was traveling at an excessive speed, as such an excessive speed claim was precluded by FRSA. The motion in limine was denied and, in BNSF's reply to its summary judgment motion, it reasserted that Noice's claim could not be based on the speed of the train due to preclusion by FRSA.

2

{4} The district court held a hearing on the motion for summary judgment, which focused on the issue of causation. There was some discussion as to whether Noice's claims were based solely on speed. The district court granted summary judgment, having determined that the only premise for the FELA claim was excessive speed, which was precluded by FRSA. Noice appealed.

## II. DISCUSSION

{5} "An appeal from the grant or denial of a motion for summary judgment presents a question of law. We therefore review de novo the [district] court's denial of summary judgment." *Bartlett v. Mirabal*, 2000-NMCA-036, ¶ 4, 128 N.M. 830, 999 P.2d 1062. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. The movant must make a prima facie showing of entitlement to summary judgment. *Id.* Then, the "burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* "If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Id.*

## A. The Preclusion Argument Was Briefed Before the District Court

{6} Noice first argues that the district court impermissibly based its order on the issues of speed and preclusion because FRSA had not been discussed at the partial summary judgment hearing. Although Noice claims that the grant of summary judgment on the ground of preclusion "violates basic notions of due process[,]" he fails to include facts or legal authority to support his position. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.

{7} However, potential preclusion under FRSA was briefed and discussed several times in the record. Noice raised the issue of the train's speed in his response to BNSF's motion for summary judgment, although he did not then discuss FRSA. BNSF first raised potential preclusion of a claim based on excessive speed under FRSA in September 2011. BNSF included a brief argument regarding FRSA preclusion in its reply in support of its motion for summary judgment. In its attempt to keep evidence of speed from the facts being considered for summary judgment, BNSF fully briefed the preclusion issue in its motion in limine to exclude certain evidence. Noice briefed the legal issue of speed-based claims being precluded under FRSA in his response to that motion. The facts and legal arguments regarding preclusion were therefore presented to the district court. Additionally, despite

4

Noice's argument to the contrary, speed was mentioned as an issue in the negligence case at the hearing.

## B. FRSA Does Not Preclude Plaintiff's Speed-Based FELA Claim

{8} The district court granted BNSF's motion for summary judgment. The district court determined that Noice's negligence claim was supported by three distinct theories to support his negligence claim: (1) defective equipment threw Decedent from the train; (2) Decedent's coworker, Royal, should have conducted a safety briefing before Decedent left the locomotive; and (3) Royal increased the train's speed to fifty-five miles per hour while Decedent was walking to a different locomotive. After determining that no facts supported either of the first two theories, the district court analyzed the remaining speed-based theory of negligence and concluded that such an argument was preempted by FRSA when the train was within the speed limit. On appeal, Noice challenges the district court's rejection of each theory of negligence. Regarding preemption of his speed-based claim, Noice argues that his FELA claim remains viable despite FRSA because the cases relied on by the district court stretched a decision about state laws being preempted by FRSA to include FELA preclusion. We agree.

{9} "In 1908, Congress enacted . . . [FELA], 45 U.S.C. § 51, . . . to provide a remedy to railroad employees injured as a result of their employers' negligence." *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 775 (7th Cir. 2000). "FELA

imposes on railroads 'a general duty to provide a safe workplace[.]' " *Id.* (quoting *Kossman v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1035 (7th Cir. 2000). FELA is a general negligence statute and "neither prohibits nor requires specific conduct by a railroad." *Waymire*, 218 F.3d at 775. The legislative intent behind FELA was reduction of injuries and deaths from interstate railroad accidents. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994). "Recognizing the physical dangers inherent in the operation of a railroad, Congress 'crafted a federal remedy that shifted part of the 'human overhead' of doing business from employees to their employers.' " *Grimes v. Norfolk S. Ry. Co.*, 116 F. Supp. 2d 995, 999 (N.D. Ind. 2000) (quoting *Gottshall*, 512 U.S. at 542). "FELA is a broad remedial statute[,] which the United States Supreme Court construes liberally in order to effectuate its purposes." *Id.*

{10}    "Congress passed [FRSA], 49 U.S.C. § 20101 . . . for the purpose of promoting rail safety and making laws, regulations[,] and orders related to railroad safety nationally uniform to the extent possible." *Grimes*, 116 F. Supp. 2d at 999 (internal quotation marks and citation omitted). FRSA is more specific than the general negligence statute, FELA, and "proscribes railroad conduct by empowering the

Secretary of Transportation to implement comprehensive and detailed railroad safety regulations." *Waymire*, 218 F.3d at 775.

{11} The United States Supreme Court has determined that FRSA preempts state tort claims to the extent that they are based on an allegation of excessive speed. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 676 (1993). In *Easterwood*, a widow sued a railroad company after one of their trains struck and killed her husband at a crossing. *Id.* at 661. Among other claims, she alleged that the train was operated at an excessive speed. The Supreme Court held that, because the regulations in FRSA covered the subject matter of speed fully, her state law claim was precluded. *Id*. 674-75. The Supreme Court concluded that the regulations do more than set maximum speed limits, rather, "in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation." *Id.* at 674. However, *Easterwood* did not answer the question of any extent to which FRSA would affect a claim under FELA.

{12} Since *Easterwood*, courts have considered the issue of FRSA preclusion for excessive speed claims and other regulated matters when the claim is brought under FELA, rather than state tort law. Some courts have refused to follow *Easterwood*'s reasoning. Noice relies on *Earwood v. Norfolk Southern Railway Co.*, 845 F. Supp.

880, 891 (N.D. Ga. 1993), a federal district court opinion that concluded that a FRSA regulation does not preclude a FELA claim based on unsafe speed. In *Earwood*, the plaintiff was a railroad employee who was injured when the train he was on collided with a truck at an intersection. *Id.* at 883. One of his claims for negligence under FELA was for excessive speed. *Id.* The *Earwood* court held that FRSA did not preclude FELA claims because "[t]he two statutes do not purport to cover the same areas." *Id.* at 885. The court stated that, because FRSA does not address the standard of care required of employer railroads, FELA claims could still be based on allegations of unsafe speed. *Id.* The *Earwood* court concluded that "[FRSA speed] regulations were not directed at the issue of employee safety." *Id.* at 891. Although safety may be a consequence of the regulation, the court stated that it is not the primary objective. Thus, the FELA claim is not precluded. This district court opinion has since been rejected by two circuits.

{13} The Seventh Circuit specifically rejected the district court's opinion in *Earwood* and stated that "we are instead faced with the interaction of two federal statutes." *Waymire*, 218 F.3d at 775. "But, we find the opinion of the [United States] Supreme Court on the subject of the preemption of unsafe train speed claims to be instructive and so we discuss it here." *Id.* In *Waymire*, the Seventh Circuit held that,

9

in order to be consistent with *Easterwood* and "to uphold FRSA's goal of uniformity," the plaintiff's claim of negligence under FELA was "superseded by FRSA and the [speed] regulations." *Waymire*, 218 F.3d at 777. Part of the court's reasoning was that it would be absurd if a train traveling under the speed limit would not be subject to liability under state law because FRSA precluded all speed-related claims and put them beyond the reach of state courts. *Id.* A preemption analysis does not apply when considering the interaction of two federal statutes. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("One federal statute does not preempt another.") Although the *Waymire* court recognized that a preemption analysis did not apply, it nonetheless based its conclusion in part on *Easterwood*'s assessment of whether FRSA "covered" the subject at issue. *See Waymire*, 218 F.3d at 775-76.

{14}    The Fifth Circuit, in *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439 (5th Cir. 2001), found *Waymire*'s application of *Easterwood* to be persuasive. The court in *Lane* emphasized that FRSA regulations should preempt excessive speed claims under FELA based on the importance of uniform liability no matter the class of the plaintiffs in a case.

> [U]niformity can be achieved only if the regulations covering train speed
> are applied similarly to a FELA plaintiff's negligence claim and a non-
> railroad-employee plaintiff's state law negligence claim. Otherwise, a
> railroad employee could assert a FELA excessive-speed claim, but a

10

non-employee motorist involved in the same collision would be precluded from doing so. Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under . . . FRSA virtually meaningless[.]

241 F.3d at 443.

{15} "When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other [through an] irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other." *Randolph*, 368 F.3d at 730. When two federal statutes may be interpreted harmoniously, "a court must interpret them in a manner which gives . . . operation and effect to both, in the absence of clear and unambiguous expression of Congressional intent to the contrary." *United States v. Kenaan*, 557 F.2d 912, 917 (1st Cir. 1977). Thus, "repeal by implication is a rare bird indeed." *Randolph*, 368 F.3d at 730.

{16} Here, there is no "clear and unambiguous" indication in FRSA that Congress intended it to eliminate workers' remedies under FELA. *See Grimes,* 116 F. Supp. 2d at 1003 ("There is also nothing in the language or legislative history of any enactment, including FRSA, that indicates the serious purpose of undermining the basic core of FELA and its essential purposes."). The obligation of the courts is therefore to construe FRSA in such a way as to render it harmonious with FELA. The

11

*Earwood* court met this obligation when it analyzed the two statutes and concluded that FELA and FRSA have different purposes. *Earwood,* 845 F. Supp. at 885. In contrast, the *Waymire* and *Lane* line of cases effectively hold that FRSA and its associated regulations impliedly repeal FELA and fail to address the effect of repeal on railroad workers. We do not believe Congress could have intended FRSA to have such a dramatic effect without making its purpose clear. *See Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 892 (8th Cir. 2012) (stating that "the Supreme Court has cautioned that the FELA should not be cut down by inference or implication." (internal quotation marks and citation omitted)); *Myers v. Ill. Cent. R.R. Co.*, 753 N.E.2d 560, 565 (Ill. App. Ct. 2001) ("If Congress had intended FRSA to abolish FELA remedies for railroad employees, we believe Congress would have said so explicitly.").

{17}     This view of the interplay between federal statutes was recently addressed by the United States Supreme Court in *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014), and, in our view, resolves the FRSA/FELA preclusion question in favor of Noice. As we noted above, both FELA and FRSA can be viewed as complementary, each with its own scope and purpose. In *POM Wonderful*, the question was whether suit for misleading descriptions of products by business competitors under the Lanham Act, 15 U.S.C. § 1125, was precluded by the Federal

Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 331, 343, that places enforcement of misbranding of food and drink in the hands of the Food and Drug Administration (FDA). *POM Wonderful*, 134 S. Ct. at 2233. The Ninth Circuit had ruled that the FDCA precluded Lanham Act suits. *Id.* Specifically, it held that the Lanham Act protected competitors as a specific class of entities, as opposed to members of the public at large whom the FDCA was designed to protect, but whose rights are almost exclusively enforced by the federal government in the form of the FDA. *Id.* at 2234-35. The United States Supreme Court rejected the lower court's reliance on the FDCA's regulating juice labeling, as representing Congress's choice to give authority over the matter to the FDA, precluding a court "to act [in a Lanham case] when the FDA has not[.]" *Id.* at 2236.

{18} In reversing its decision, the United States Supreme Court pointed out the lack of clear congressional intent to limit the Lanham Act by enacting the FDCA, specifically ruling that Lanham Act suits are not precluded. *Id.* at 2237. The United States Supreme Court determined that "Congress did not intend [the] FDA oversight to be the exclusive means of ensuring proper food and beverage labeling." *Id.* at 2231 (internal quotation marks and citation omitted). Rather, it found the statutes to be complementary in nature and held that each imposed "different requirements and

13

protections" and therefore allowed a competitor's suit under the Lanham Act as protective of a specific interest group. *Id.* at 2238 (internal quotation marks and citation omitted).

{19} Although not directly on point, we find *POM Wonderful* to be instructive. As we noted, FELA was enacted as a safe workplace legislation in 1908 to protect the safety of railroad workers by allowing negligence suits against their employers. The FRSA was enacted to provide national uniformity in railroad safety regulations. Although both laws are intended to have an impact on railroad safety, FELA's thrust in protecting workers can easily exist apart from FRSA-enacted regulation of industry safety standards. We conclude that as *Easterwood* dealt only with FRSA preclusion of state law suits, *POM Wonderful* speaks more clearly to whether FRSA would preclude a negligence suit under FELA by railroad employees who benefit from the provisions permitting negligent actions. Similarly, any confusion in the federal circuits spawned by *Waymire*, we now regard as resolved. We hold that Noice's FELA count is not precluded by FSRA.

## C. Plaintiff's Other Arguments Are Not Supported

{20} Noice also argues that, because he brought his negligence claim pursuant to FELA, it should be adjudicated pursuant to federal law. However, as Noice correctly

points out, FELA actions in state courts follow state procedural rules, including rules for summary judgment. *Rivera v. Atchison, Topeka & Santa Fe Ry. Co.*, 1956-NMSC-072, ¶ 10, 61 N.M. 314, 299 P.2d 1090 ("[I]n cases arising in [s]tate [c]ourts under . . . [FELA], 45 U.S.C.A. § 51 . . . , all procedural matters, including review of verdicts for excessiveness, are governed by the law of the forum and not by the Federal Decisional Law."). This motion, therefore, is correctly governed by Rule 1-056 NMRA.

{21} Noice argues that his claims should have gone to the jury to consider evidence that (1) "there was excessive motion on the second locomotive"; (2) Royal "should have inquired whether he needed to conduct a safety meeting, [or] that he should have conducted a safety meeting"; and (3) Royal "should have contacted [Decedent] earlier . . . [and] stopped the train" more quickly. Noice insists that these were factual issues, but fails to point to evidence in the record that creates an issue of disputed fact regarding excessive motion, the relevance of safety meetings, or Royal's behavior after Decedent left as causal factors. Where a party fails to cite any portion of the record to support its factual allegations, the Court need not consider its argument on appeal. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819. We agree with the district court that Noice

failed to point to evidence that a safety meeting was required in his response to the motion for summary judgment. The district court could thus conclude that Noice failed to create an issue of genuine material fact under the standard for summary judgment. Without these facts in dispute, we need not consider whether such issues may have caused or contributed to Decedent's fall. "It is well settled that an appellate court will not decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief, or from the determination of which no practical relief can follow." *Valencia Water Co. v. Neilson*, 1920-NMSC-076, ¶ 3, 27 N.M. 29, 192 P. 510.

{22} The district court stated in its order for summary judgment that, regarding Royal's increase of the train's speed, "[w]hether [Royal] was complying with [Decedent's] orders or creating an unsafe working condition is a disputed issue of fact." We do not need to consider whether the speed caused Decedent's fall.

{23} Noice also argues that the district court incorrectly examined each individual basis for his negligence claim, rather than look at it as a whole. However, he fails to point to any evidence that would create a genuine issue of fact when looked at holistically. Again, the Court need not consider his argument on appeal. *See Santa*

*Fe Exploration*, 1992-NMSC-044, ¶ 11.  However, as his claim based on the train's speed survives, we reverse the district court's grant of summary judgment.

**III.    CONCLUSION**

{24}    In light of *POM Wonderful* (distinguishing between preemption and preclusion), we conclude that Noice's FELA suit was not precluded by FSRA and that summary judgment for BNSF should be reversed.

{25}    **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

17

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**

18