[No. F068769. Fifth Dist. June 30, 2015.]

DELTON R. FAIR, Plaintiff and Respondent, v.
BNSF RAILWAY COMPANY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III.–VI.

## COUNSEL

Dowling Aaron, Steven M. Vartabedian; Flesher McKague, Jacob D. Flesher, Jason W. Schaff; BNSF Railway Company, Wayne L. Robbins, Jr.; Kelly Hart & Hallman and Marianne M. Auld for Defendant and Appellant.

Law Offices of Ruel Walker, W. Ruel Walker; Hildebrand, McLeod & Nelson, Anthony S. Petru and Kristoffer S. Mayfield for Plaintiff and Respondent.

## OPINION

**GOMES, J.**—Plaintiff Delton R. Fair was working on the railroad. After he injured his back and knee while trying to throw a switch, he brought this

action against BNSF Railway Company (BNSF) under the federal Employers' Liability Act (FELA) (45 U.S.C. § 51 et seq.), alleging that he was injured as a result of BNSF's negligence. A jury found in Fair's favor and awarded him a total of $3,216,000 in damages.

BNSF's primary argument on appeal is that the Federal Railroad Safety Act of 1970 (FRSA) (49 U.S.C. § 20101 et seq.), and the regulations promulgated thereunder, preclude Fair's FELA claim in its entirety. In support of its argument, BNSF relies on the authority of several federal appellate courts. Guided by recent court decisions that have reanalyzed the preclusion issue in light of the United States Supreme Court's recent decision in *POM Wonderful v. Coca-Cola Co.* (2014) 573 U.S. ___ [189 L.Ed.2d 141, 134 S.Ct. 2228] (*POM Wonderful*), we reject BNSF's argument, and instead conclude that FRSA and its regulations do not preclude federal claims under FELA. We reject BNSF's other contentions in the unpublished portion of the opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early hours of January 27, 2011, 46-year-old Fair was working as a "herder" in BNSF's Fresno railroad yard, attaching together a group of locomotives. About 1:30 a.m., he injured his back when he tried to throw the 5176 switch;[1] pain immediately shot into his leg and up his back. When he tried to walk the pain off, his knees went out from under him; his left knee was injured when it hit what Fair believed was the edge of a railroad tie.

In December 2011, Fair brought this action for damages against BNSF under FELA. The case was tried to a jury in September 2013. The jury returned a special verdict finding BNSF negligently caused Fair's injuries and awarded the following: (1) $236,000 for past economic loss; (2) $1.5 million for future economic loss; (3) $300,000 for future medical expenses; (4) $380,000 for past noneconomic loss; and (5) $800,000 for future noneconomic loss.

BNSF moved for a new trial, asserting, among other arguments, the same arguments it pursues in this appeal. The trial court denied the motion, and BNSF filed this timely appeal.

As necessary, other relevant facts are included in the discussion that follows.

---

[1] A switch is a track apparatus designed to allow trains or cars to move from one track to another. The switch is operated by manually moving, or throwing, a handle from one side to the other, which moves a connecting rod.

## DISCUSSION

### I. *FELA Overview*

■ While injured employees in California generally are entitled to workers' compensation benefits regardless of whether the employer was at fault (Lab. Code, § 3200 et seq.), those benefits are not available to *railroad* employees who suffer on-the-job injuries. Instead, their right of recovery is governed by FELA, which permits recovery only if the employer acted negligently. (*Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 6 [1 Cal.Rptr.3d 412, 71 P.3d 770] (*Lund*); *Bergman v. St. Louis Southwestern Ry. Co.* (1982) 134 Cal.App.3d 696, 700–701 [185 Cal.Rptr. 150] [noting a railroad is not strictly liable for its employee's injuries; instead, the employee must prove the employer was negligent].) A FELA action may be brought in either federal or state court. (*Lund, supra,* 31 Cal.4th at p. 6; see *Kinsey v. Union Pacific Railroad Co.* (2009) 178 Cal.App.4th 201, 204 [100 Cal.Rptr.3d 253].) "When, as here, a FELA action is brought in state court, state law governs procedural questions, while federal law governs substantive issues. (*St. Louis Southwestern R. Co. v. Dickerson* (1985) 470 U.S. 409, 411 [84 L.Ed.2d 303, 105 S.Ct. 1347].) State procedure does not apply, however, if it results in the denial of a federal right granted by Congress." (*Lund, supra,* 31 Cal.4th at pp. 6–7.)

■ Under FELA, a railroad employee has the right to sue his or her employer for "such injury . . . resulting in whole or in part from the negligence" of the railroad or its employees. (45 U.S.C. § 51; see *id.,* § 56; *Woods v. Union Pacific Railroad Co.* (2008) 162 Cal.App.4th 571, 577 [75 Cal.Rptr.3d 748] (*Woods*).) FELA was enacted "because the Congress was dissatisfied with the common-law duty of the master to his servant. [It] supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." (*Rogers v. Missouri Pacific R. Co.* (1957) 352 U.S. 500, 507 [1 L.Ed.2d 493, 77 S.Ct. 443], fn. omitted (*Rogers*).) "FELA imposes upon a railroad a continuing and nondelegable duty to use reasonable care to provide railroad employees a safe place to work." (*Woods, supra,* 162 Cal.App.4th at p. 577.)

The standard under FELA is a relaxed one; to prove that a railroad breached its duty, a "plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm [and] then show that this breach played any part, even the slightest, in producing the injury." (*McGinn v. Burlington Northern Railroad Co.* (7th Cir. 1996) 102 F.3d 295, 300, citation omitted.) "It is well established that the quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence action." (*Harbin v. Burlington Northern Railroad Co.* (7th

Cir. 1990) 921 F.2d 129, 131.) If the negligence of the employer "played *any part, however small,* in the injury," the employer is liable. (*Rogers, supra,* 352 U.S. at pp. 507–508, italics added.) Neither assumption of the risk nor the contributory negligence of the employee bars recovery, if the injury was at least in part the result of the employer's negligence. (45 U.S.C. §§ 53, 54.)

## II. *FRSA Preclusion*

BNSF first contends Fair's FELA claim is precluded completely by FRSA and its regulations. Before trial, BNSF moved in limine to preclude Fair from establishing his FELA claim based on conduct that complies with regulations promulgated pursuant to FRSA. BNSF argued that in light of the preclusive effect of FRSA, the regulation that addresses switch inspections, 49 Code of Federal Regulations part 213.235 (2014), effectively set the standard of care in this case. BNSF thus contended that Fair should be precluded from offering any evidence that the relevant standard of care required more frequent inspections than that set forth in the regulation or that inspections be conducted in a particular manner. In opposing BNSF's motion, Fair argued that while FRSA preempts state law claims covered by its regulations, it does not preclude federal claims under FELA. Fair also argued his negligence claim encompassed conduct that was not covered by the switch inspection regulation.

The trial court denied BNSF's motion based on the reasoning in an unpublished decision from the Eastern District of California, *Powell v. Union Pacific Railroad Co.* (E.D.Cal., May 2, 2013, No. CIV. 2:09-01857 WBS CKD) 2013 WL 1857893, in which that court determined the same FRSA switch inspection regulation did not preclude the plaintiff's FELA claim based on the railroad's failure to inspect a switch more frequently than once a month.[2]

At trial, Fair presented evidence on, and argued, several theories of negligence. Specifically, Fair argued BNSF was liable for his injuries if the jury found either (1) BNSF did not uphold its duties to properly inspect and maintain the switch, or (2) an employee damaged the switch by running through it, thereby bending the connecting rod, but failed to report it.

On appeal BNSF contends the trial court erred in finding preclusion did not apply. The parties agree that whether FRSA precludes Fair's FELA claim presents a question of law governed by the de novo standard of review.

 FRSA was enacted in 1970 with the stated purpose of "promot[ing] safety in every area of railroad operations and reduc[ing] railroad-related

---

[2] BNSF renewed the preclusion issue when arguing for a directed verdict both after Fair rested his case and at the close of all the evidence. The trial court denied both motions.

accidents and incidents." (49 U.S.C. § 20101.) While FELA is a general negligence statute that neither prohibits nor requires certain conduct by the railroad, FRSA proscribes railroad conduct by empowering the Secretary of Transportation to implement comprehensive and detailed railroad safety regulations. (49 U.S.C. § 20103; *Waymire v. Norfolk and Western Railway Co.* (7th Cir. 2000) 218 F.3d 773, 775 (*Waymire*).) The Secretary of Transportation has delegated this authority to the Federal Railroad Administration (FRA). (*Union Pacific Railroad Co. v. California Public Utilities Com.* (9th Cir. 2003) 346 F.3d 851, 858, fn. 8.)

■ In a section addressing the preemption of certain state laws, FRSA provides that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." (49 U.S.C. § 20106(a)(1).)[3] To maintain such uniformity, FRSA contains an express preemption clause, pursuant to which "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation (with respect to railroad safety matters) . . . prescribes a regulation or issues an order covering the subject matter of the State requirement. . . ." (§ 20106(a)(2).) FRSA preempts covered state law tort claims, in addition to covered statutes and regulations. (See *CSX Transp., Inc. v. Easterwood* (1993) 507 U.S. 658, 664, 670–671 [123 L.Ed.2d 387,

---

[3] Title 49 United States Code section 20106, entitled Preemption, reads in its entirety: "(a) National uniformity of regulation.—(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. [¶] (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—[¶] (A) is necessary to eliminate or reduce an essentially local safety or security hazard; [¶] (B) is not incompatible with a law, regulation, or order of the United States Government; and [¶] (C) does not unreasonably burden interstate commerce.

(b) Clarification regarding State law causes of action.—(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—[¶] (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section; [¶] (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or [¶] (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2). [¶] (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

(c) Jurisdiction.—Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action." (Some capitalization omitted.)

Subsequent references to section 20106 shall be to 49 United States Code section 20106.

113 S.Ct. 1732] (*Easterwood*).) An FRSA regulation covers and thus preempts a state law tort claim if it "substantially subsume[s] the subject matter" of that claim. (*Easterwood, supra,* 507 U.S. at p. 664; see *Norfolk Southern R. Co. v. Shanklin* (2000) 529 U.S. 344, 352 [146 L.Ed.2d 374, 120 S.Ct. 1467].)

In *Easterwood,* the widow of a truck driver killed in a railroad crossing collision brought a state law wrongful-death claim against the railroad. The United States Supreme Court held that FRSA's preemption clause barred the lawsuit to the extent it was based on an allegation that the railroad's train was traveling at an excessive speed. (*Easterwood, supra,* 507 U.S. at p. 661.) The Supreme Court determined the widow could not maintain her excessive speed claim because the Secretary of Transportation had promulgated regulations under FRSA setting maximum train speeds for certain classes of railroad track, thereby covering the subject matter of train speed with respect to track conditions, and the train was traveling within that speed limit. (*Easterwood, supra,* 507 U.S. at pp. 673–675.)

■ *Easterwood,* however, did not answer the question of whether FRSA would affect a claim under FELA, and FRSA is silent on this issue. BNSF asserts that just as FRSA preempts state law negligence suits, it should preclude Fair's FELA negligence suit. There is a difference between preemption and preclusion: "In pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action," while a preclusion case "concerns the alleged preclusion of a cause of action under one federal statute by the provisions of another federal statute." (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2236].) While preclusion analysis is not governed by the "complex categorization" applicable to preemption, the principles of preemption are "instructive insofar as they are designed to assess the interaction of laws that bear on the same subject." (*Ibid.*) Preclusion is a matter of statutory interpretation, which applies even when multiple federal statutes or a federal agency are involved. (*Ibid.*)

■ BNSF asserts Fair's lawsuit is barred by regulations contained under part 213 of the Code of Federal Regulations, entitled "Track Safety Standards." Inspection of switches is covered in 49 Code of Federal Regulations part 213.235 (2014), which provides: "(a) Except as provided in paragraph (c) of this section, each switch, turnout, track crossing, and moveable bridge lift rail assembly or other transition device shall be inspected on foot at least monthly. [¶] (b) Each switch in Classes 3 through 5 track that is held in position only by the operating mechanism and one connecting rod shall be operated to all of its positions during one inspection in every 3 month period. [¶] (c) In the case of track that is used less than once a month, each switch,

turnout, track crossing, and moveable bridge lift rail assembly or other transition device shall be inspected on foot before it is used."[4] The regulations also cover the preparation and storage of inspection reports, and create civil and criminal penalties for violations of the regulations. (49 C.F.R. §§ 213.15, appen. B., 213.241 (2014).) Finally, the regulations delegate responsibility to the railroads to comply with the requirements of part 213 and set minimum qualifications for track inspectors. (49 C.F.R. §§ 213.5, 213.7 (2014).)

BNSF asserts that these regulations, taken together, evidence FRA's intent to substantially subsume any negligent switch inspection claim. In support, BNSF cites a case which found FRSA preempted state law claims of negligent inspection of freight cars, *In re Derailment Cases* (8th Cir. 2005) 416 F.3d 787, 793–794, and another which found that the FRSA regulation at issue here precluded a railroad employee's FELA claim that inspections should have occurred more than once per month, but did not preclude a claim that the inspections were subpar, *Ferren v. National R.R. Passenger Corp.* (N.D.Ill., Dec. 12, 2001, No. 00 C 2262) 2001 WL 1607586, pages *4–*5. BNSF argues that because Fair's negligence claim was rooted in BNSF's failure to inspect the switch more frequently than FRSA regulations require, it falls within the scope of the regulations and is therefore precluded.[5]

Courts have reached different conclusions regarding the preclusive effect of FRSA on FELA claims. The Seventh Circuit Court of Appeals has held that FRSA superseded a railroad conductor's FELA claim that he suffered post-traumatic stress disorder after the train collided with a truck stopped on the railroad tracks; the lawsuit alleged the railroad was negligent for allowing the train to travel at an unsafe speed and failing to install additional warning devices at the crossing. (*Waymire, supra,* 218 F.3d at pp. 774, 777.) Although the *Waymire* court recognized *Easterwood* involved a preemption, not a preclusion, analysis, it found the case instructive. (*Waymire, supra,* 218 F.3d at p. 776.) The court determined that, in order to be consistent with *Easterwood* and "to uphold FRSA's goal of uniformity," it must reach the same result as *Easterwood,* since it would "seem absurd to reach a contrary conclusion in this case" when trains in both cases were operated identically and the Supreme Court already found the conduct was not culpable negligence. (*Waymire, supra,* 218 F.3d at p. 776.) The *Waymire* court further explained:

---

[4] Part 213.235 is contained in part 213, subpart F, of the Code of Federal Regulations, which is entitled "Inspection." "This subpart prescribes requirements for the frequency and manner of inspecting track to detect deviations from the standards prescribed in this part." (49 C.F.R. § 213.231 (2014).)

[5] BNSF recognizes that one of the negligence theories that Fair presented to the jury, i.e., that the switch might have been damaged by a run through, would not be precluded by FRSA regulations. BNSF, however, argues this claim should not impact our analysis because it was not supported by competent evidence.

"To treat cases brought under federal law differently from cases brought under state law would defeat FRSA's goal of uniformity. It would deny recovery to the motorist struck by the train, but not to the engineer operating the train. We do not believe that is the result envisioned by the statute or by the Supreme Court's decisions." (*Waymire, supra,* 218 F.3d at p. 777.)

The Fifth and Sixth Circuit Courts of Appeals have embraced the reasoning of *Waymire.* (*Nickels v. Grand Trunk Western Railroad Inc.* (6th Cir. 2009) 560 F.3d 426, 430 (*Nickels*); *Lane v. R.A. Sims, Jr., Inc.* (5th Cir. 2001) 241 F.3d 439, 443 (*Lane*).)[6] The court in *Lane* emphasized that FRSA regulations should preempt excessive speed claims under FELA based on the importance of uniform liability no matter the class of the plaintiffs in a case. (*Lane, supra,* 241 F.3d at p. 443.) The *Lane* court explained: "Such uniformity can be achieved only if the regulations covering train speed are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim. Otherwise, a railroad employee could assert a FELA excessive-speed claim, but a non-employee motorist involved in the same collision would be precluded from doing so. Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless: 'The railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct.' " (*Lane, supra,* 241 F.3d at p. 443.) In *Nickels,* relying heavily on *Waymire* and *Lane,* the Sixth Circuit reached the same conclusion for similar reasons with respect to the preclusion of FELA claims by a FRSA regulation governing ballast composition. (*Nickels, supra,* 560 F.3d at p. 430.)

In the only published California state court case to address this issue, *Southern California Regional Rail Authority v. Superior Court* (2008) 163 Cal.App.4th 712, 739 [77 Cal.Rptr.3d 765] (*Southern California*), the Second District Court of Appeal followed *Waymire* in concluding that since FRSA regulations relating to operation of a train in "push mode" preempted state law wrongful death and personal injury claims of passengers and their survivors, it also precluded FELA claims by the railroad workers. The court explained: "[T]he principles that support preemption as to the passenger plaintiffs apply with the same force to the claims of the railroad worker plaintiffs. [Citation.] Consequently, the railroad worker plaintiffs push mode claims brought under the FELA are indistinguishable from those of the

---

[6] See *MD Mall Associates, LLC v. CSX Transportation, Inc.* (3d Cir. 2013) 715 F.3d 479, 491, footnote 10 (quoting *Nickels* and *Lane,* the court noted there is a "general consensus" that uniformity can be achieved only if FRSA regulations are applied similarly to FELA and state law claims, consequently "courts apply the principles distilled by *Easterwood* and its progeny in determining whether a claim under FELA is substantially subsumed, and therefore precluded, by railroad safety regulations enacted pursuant to the FRSA . . . .")

passenger plaintiffs brought under state negligence law." (*Southern California, supra,* 163 Cal.App.4th at p. 739.)

Although the Ninth Circuit Court of Appeals has not addressed this issue, some federal district courts within the circuit have applied the reasoning in *Nickels* and *Easterwood* when determining whether FRSA precludes a FELA claim. (*Allenbaugh v. BNSF Railway Co.* (E.D.Wash. 2011) 832 F.Supp.2d 1260, 1266 ["If a cause of action would be preempted by the FRSA if brought under state law, the cause is likewise precluded by the FRSA if it is brought under the FELA."]; *Abromeit v. Montana Rail Link, Inc.* (D.Mont., Sept. 15, 2010, No. CR 09-93-M-DWM) 2010 WL 3724425, p. *4 & fn. 2 [noting that while preemption analysis only applies to conflicts between state and federal law, courts have concluded FELA claims may be precluded under a similar analysis based on FRSA's policy of ensuring uniformity in railway safety]; see *Parise v. Union Pacific R.R.* (E.D.Cal., May 14, 2014, No. 2:14-cv-0022 KJN PS) 2014 WL 2002281, p. *7 [holding that analogous federal Locomotive Inspection Act (Feb. 17, 1911, ch. 103, 36 Stat. 913) precluded FELA claim].)

Other courts, however, have declined to apply *Easterwood*'s reasoning to preclusion claims. In *Earwood v. Norfolk Southern Railway Co.* (N.D.Ga. 1993) 845 F.Supp. 880 (*Earwood*), the district court concluded that FRSA did not preclude a railroad employee's excessive speed claim under FELA because "[t]he two statutes do not purport to cover the same areas" and FRSA does not purport to define the standard of care with which railroads must act with regard to employees. (845 F.Supp. at p. 885.) Noting that unless there is "an intolerable or irreconcilable conflict between two statutes, a court need not decide whether one controls over the other," the district court found there was no " 'intolerable conflict' " between FRSA and FELA. (845 F.Supp. at p. 885.) Since under a preclusion analysis a court must examine the purpose underlying the regulation, the district court concluded it was not contrary to the evident statutory purpose of FRSA regulations to allow a FELA claim based on unsafe speed, since the regulations were not directed at the issue of employee safety. (845 F.Supp. at p. 891.)[7]

In the case the trial court relied on in denying BNSF's in limine motion, *Powell, supra,* 2013 WL 1857893, the district court found that FRSA did not preclude the plaintiff's FELA claim based on the railroad's failure to inspect its railroad switches in general, or the particular switch at issue in the case. The district court declined to follow *Waymire,* noting that *Easterwood* did not address whether (1) the preemptive effect of FRSA would apply to claims of negligence under FELA, or (2) the switch inspection regulations substantially

---

[7] The courts in *Waymire* and *Lane* both declined to follow the decision in *Earwood.* (*Waymire, supra,* 218 F.3d at p. 776; *Lane, supra,* 241 F.3d at p. 443.)

subsume the subject matter such that they are incompatible with FELA claims based on frequency of inspection. (*Powell, supra,* 2013 WL 1857893 at p. *1.) Noting that FRSA preemption effectuates the primacy of federal laws by limiting state law negligence claims that could result in inconsistent regulation of railroad safety, the district court found this goal did not seem to justify FRSA preclusion of FELA claims because the standard of care is one of federal law that applies across the nation. (*Powell, supra,* 2013 WL 1857893 at p. *2.) The district court reasoned that finding preclusion between the two statutes would be tantamount to concluding Congress intended FRSA to reconfigure the basic structure for imposing liability under FELA from one of negligence to only statutory violations in certain instances. (*Powell, supra,* at p. *2.)[8]

In *Cowden v. BNSF Railway Co.* (8th Cir. 2012) 690 F.3d 884, 892 (*Cowden*), the Eighth Circuit Court of Appeals criticized the reasoning of *Waymire* and its progeny. The court, however, declined to create a circuit split, as the issue was not properly raised in the district court and even if FRSA's express preemption clause could be applied to preclude federal laws, it was not properly applied in that case. (*Cowden, supra,* 690 F.3d at p. 892.)

More recently, federal and state courts have declined to follow *Waymire, Lane* and *Nickels,* and instead have held that FRSA and its regulations do not preclude FELA claims, relying, in part, on the United States Supreme Court's June 2014 decision in *POM Wonderful, supra,* 573 U.S. ___ [134 S.Ct. 2228]. (See *Henderson v. National Railroad Passenger Corp.* (S.D.N.Y. 2015) 87 F.Supp.3d 610, 613–620 (*Henderson*); *Hananburgh v. Metro-North Commuter Railroad* (S.D.N.Y., Mar. 18, 2015, No. 13-CV-2799 (JMF)) 2015 WL 1267145, pp. *2–*4; *Bratton v. Kansas City Southern Railway Co.* (W.D.La., Feb. 24, 2015, No. 13-3016) 2015 WL 789127; *Noice v. BNSF Railway Co.* (2015) 2015-NMCA-054 [348 P.3d 1043, 1046–1049], cert. granted May 11, 2015 (*Noice*).)

Based on the reasoning in these recent decisions, we respectfully disagree with the decisions in *Waymire, Lane,* and *Nickels,* as we find the reasoning in *Henderson* and the more recent decisions more persuasive. Accordingly, we conclude that FRSA does not preclude Fair's FELA claim.

---

[8] The district court also found that even if FRSA regulations sometimes preclude FELA claims, it was not satisfied that the regulation at issue, 49 Code of Federal Regulations part 213.235 (2014), had a preclusive effect because the concern behind the regulation was not to protect employees from injuries while pulling the switch, but rather to prevent derailments and other catastrophes resulting from improperly aligned or defective switches. (*Powell, supra,* 2013 WL 1857893 at p. *3.)

■ As pointed out by the New Mexico Court of Appeals in *Noice,* " '[w]hen two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other [through an] irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other.' *Randolph* [*v. IMBS, Inc.* (7th Cir. 2004)] 368 F.3d [726,] 730. When two federal statutes may be interpreted harmoniously, 'a court must interpret them in a manner which gives . . . operation and effect to both, in the absence of clear and unambiguous expression of Congressional intent to the contrary.' *United States v. Kenaan,* 557 F.2d 912, 917 (1st Cir. 1977). Thus, 'repeal by implication is a rare bird indeed.' *Randolph,* 368 F.3d at 730." (*Noice, supra,* 348 P.3d at pp. 1047–1048.)

■ The *Noice* court concluded that because there is no "clear and unambiguous" indication in FRSA that Congress intended to eliminate workers' remedies under FELA, courts are obligated to construe FRSA in a way that harmonizes it with FELA. (*Noice, supra,* 348 P.3d at p. 1048; see *Henderson, supra,* 87 F.Supp.3d at p. 616 ["In enacting the FRSA, Congress did not clearly express an intent to preclude FELA claims."].) The *Noice* court noted the *Earwood* court met this obligation when it concluded FELA and FRSA had different purposes, while the *Waymire* line of cases effectively held that FRSA and its regulations impliedly repealed FELA without addressing the effect of repeal on railroad workers. (*Noice, supra,* 348 P.3d at p. 1048.) As the district court explained in *Henderson:* "To the contrary, the purpose of the FRSA—'to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents,' 49 U.S.C. § 20101—is entirely consistent with FELA's goal of promoting the safety of railroad employees by facilitating their ability to recover for injuries caused by a railroad's negligence." (*Henderson, supra,* at p. 616.) The *Henderson* court declined to rewrite FRSA's express statutory language by inferring its regulations preclude covered federal claims under FELA as well as covered state law claims. (*Ibid.*)

Moreover, while the *Waymire* line of cases was concerned with uniformity, FRSA's "vague directive" that " '[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable,' " must be read in the context of the section in which it appears, which exclusively addresses the preemption of state law. (*Henderson, supra,* 87 F.Supp.3d at p. 616.) In contrast, FELA imposes a nationally uniform standard for determining whether a railroad should be held liable for injuries sustained by its employees. (*Ibid.;* see *Urie v. Thompson* (1949) 337 U.S. 163, 174 [93 L.Ed. 1282, 69 S.Ct. 1018] (*Urie*) ["[w]hat constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes."].)

Allowing safety-related suits under FELA will enhance FRSA's stated purpose of promoting railroad safety and reducing accidents. (49 U.S.C. § 20101.) It is true that, if FRSA preempts covered state laws only, inconsistent recoveries may result for railroad employees under FELA and other plaintiffs bringing state law claims. That risk, however, is not unique, as the relaxed causation standard under FELA already presents a possibility that in any given case, railroad employees may be able to recover under FELA while a plaintiff's state law claim based on the same negligent conduct fails.

The *Henderson* and *Noice* courts found instructive the United States Supreme Court's decision in *POM Wonderful, supra,* 573 U.S. ___ [134 S.Ct. 2228], which addressed the interplay between federal statutes. (*Henderson, supra,* 87 F.Supp.3d at pp. 620–621; *Noice, supra,* 348 P.3d at p. 1048.) In *POM Wonderful,* the question was whether a suit under the Lanham Act (15 U.S.C. § 1125) alleging that Coca-Cola, the plaintiff's business competitor, used a deceptive and misleading label on Coca-Cola's product, was precluded by the Federal Food, Drug, and Cosmetic Act (FDCA) (21 U.S.C. §§ 331, 343), that forbids the misbranding of food, including by false and misleading labeling, and places enforcement of misbranding of food and drink in the hands of the Food and Drug Administration (FDA). (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2233].) The Ninth Circuit Court of Appeals held the FDCA precluded the Lanham Act claim, reasoning that Congress decided to entrust matters of juice beverage labeling to the FDA, which promulgated comprehensive labeling regulations that did not impose the requirements the plaintiff sought to impose on Coca-Cola. (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2236].) The Ninth Circuit did not believe it should act where the FDA had not, as to do so would risk undercutting the FDA's expert judgment and authority. (*Ibid.*)

The Supreme Court reversed, finding preclusion did not apply, as (1) there was no statutory text or established interpretive principle to support preclusion, (2) nothing relating to either statute showed a congressional purpose or design to forbid such suits, and (3) to the contrary, the statutes complemented each other in the federal regulation of misleading food and beverage labels. (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2233].)

The court first explained that neither statute contained a provision that disclosed a purpose to bar unfair competition claims like that asserted by the plaintiff. (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2237].) The court found this absence of "special significance" because the two statutes had coexisted for 70 years, and if Congress had concluded that Lanham Act suits could interfere with the FDCA, it might have enacted a provision addressing the issue. (573 U.S. at p. ___ [134 S.Ct. at p. 2237].) The court noted that while Congress had enacted amendments to the FDCA and

Lanham Act, including an amendment that added an express preemption provision with respect to state laws addressing food and beverage misbranding, it did not enact a provision addressing the preclusion of other federal laws in this area; in the court's view, this constituted " 'powerful evidence that Congress did not intend FDA oversight to be the exclusive means' of ensuring proper food and beverage labeling." (573 U.S. at p. ___ [134 S.Ct. at p. 2237].) The court further found that the complex preemption provision added to the FDCA in 1990, which was the closest the statutes had come to addressing the preclusion of the plaintiff's Lanham Act claim, suggested that Lanham Act suits are not precluded. (573 U.S. at p. ___ [134 S.Ct. at pp. 2237–2238].)

■ In finding the statutes complemented each other, the court explained that the statutes have their own scope and purpose; while both touch on food and beverage labeling, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety. (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2238] ["When two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other."].) The court further explained that even when the Lanham Act touches on the same subject matter as the FDCA, Lanham Act suits provide incentives for manufacturers to behave well and allowing such suits "takes advantage of synergies among multiple methods of regulation." (573 U.S. at p. ___ [134 S.Ct. at pp. 2238–2239].) The court noted this was "consistent with the congressional design to enact two different statutes, each with its own mechanisms to enhance the protection of competitors and consumers." (573 U.S. at p. ___ [134 S.Ct. at p. 2239].)

In reaching these conclusions, the court rejected Coca-Cola's argument that preclusion applied because Congress intended national uniformity in food and beverage labeling: "Although the application of a federal statute such as the Lanham Act by judges and juries in courts throughout the country may give rise to some variation in outcome, this is the means Congress chose to enforce a national policy to ensure fair competition. It is quite different from the disuniformity that would arise from the multitude of state laws, state regulations, state administrative agency rulings, and state court decisions that are partially forbidden by the FDCA's pre-emption provision. Congress not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important." (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at pp. 2239–2240].)

■ The court also rejected the government's argument that Lanham Act claims were precluded " 'to the extent the FDCA or FDA regulations specifically require or authorize the challenged aspects of [the] label.' " (*POM*

*Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2240].) The court found the government's position flawed—instead of the FDCA and its regulations being a ceiling on the regulation of food and beverage labeling, Congress intended the two statutes to complement each other with respect to such labeling. *(Ibid.)* The court explained: "The Government asks the Court to preclude private parties from availing themselves of a well-established federal remedy because an agency enacted regulations that touch on similar subject matter but do not purport to displace that remedy or even implement the statute that is its source. Even if agency regulations with the force of law that purport to bar other legal remedies may do so, . . . it is a bridge too far to accept an agency's after-the-fact statement to justify that result here. An agency may not reorder federal statutory rights without congressional authorization." (573 U.S. at p. ___ [134 S.Ct. at p. 2241], citations omitted.)

 We agree with the *Henderson* court that, while *POM Wonderful* does not involve FRSA or FELA, its reasoning is "highly instructive in interpreting the relationship between" those statutes. *(Henderson, supra,* 87 F.Supp.3d at p. 620.) As the *Henderson* court explained: "Like the FDCA, the FRSA authorizes an agency to promulgate specific regulations in furtherance of the statute's purpose and provides that those regulations preempt certain state laws in the interest of national uniformity. Like the Lanham Act, the FELA provides a broad private right of action under federal law that purportedly undermines such uniformity. And like the relationship between the Lanham Act and the FDCA, the FELA and the FRSA complement each other in significant respects, in that each statute is designed to accomplish the same goal of enhancing railroad safety through different means. Under these circumstances, *POM Wonderful* clearly dictates that the FRSA should not be interpreted to preclude federal claims under the FELA, in accordance with the plain meaning of its text." *(Henderson, supra,* at pp. 620–621.)[9] The *Henderson* court noted that the objective of achieving national uniformity is explicitly stated in FRSA, while that objective is implied in the FDCA, but thought this was a minor distinction that did not warrant a different result, as nothing in *POM Wonderful* suggested its reasoning hinged on Congress's failure to make explicit the FDCA's implicit objective of

---

[9] Admittedly, there is a somewhat greater overlap between the scope and purpose of FRSA and FELA than the statutes in *POM Wonderful,* as both are directed toward railroad safety. But they accomplish this goal through different means: FRSA seeks to enhance safety in "every area of railroad operations," and protects the public as well as railroad workers through national, comprehensive regulatory standards (49 U.S.C. §20101), while FELA focuses solely on the safety of railroad workers through the common law of negligence, rather than prohibiting or requiring specific conduct. Similar to the statutes in *POM Wonderful,* allowing FELA suits "takes advantage of synergies among multiple methods of regulation" and is "consistent with the congressional design to enact two different statutes, each with its own mechanisms to enhance" railroad safety. *(POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2239].)

achieving nationally uniform laws related to food and drink labeling. (*Henderson, supra,* at p. 621.)

BNSF argues we should not follow these recent decisions because they do not give due deference to the *Waymire* line of cases, as they do not explain how *POM Wonderful* changed the preclusion analysis or why *Waymire* should not be afforded any deference in light of these changes. But the cases do explain why *Waymire* should not be followed—because to do so would be to rewrite FRSA's express statutory language by inferring that its regulations preclude covered FELA claims as well as covered state law claims (*Henderson, supra,* 87 F.Supp.3d at p. 616; *Noice, supra,* 348 P.3d at p. 1048.)

■ To the extent BNSF is contending that we are required to defer to the *Waymire* line of cases, we disagree. " '[D]ecisions of the lower federal courts, although entitled to great weight, are not binding on state courts. "[T]he decisions of the lower federal courts on federal questions are merely persuasive. . . . Where lower federal court precedents are divided or lacking, state courts must necessarily make an independent determination of federal law." (*Rohr Aircraft Corp. v. San Diego* (1959) 51 [Cal.]2d 759, 764 [336 P.2d 521].)' (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 506, pp. 569–570.)" (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 839 [91 Cal.Rptr.3d 475] [split in federal authority on effect of qualified domestic relations order under Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.) required state court to make independent evaluation].)[10]

---

[10] We note that in *Keiper v. Northwestern Pac. R. Co.* (1955) 134 Cal.App.2d 702 [286 P.2d 47], the Third District Court of Appeal declined to resolve a conflict in federal law in a FELA case, stating as a general proposition that "[a]ll questions of substance presented in actions under this statute are federal questions upon which the decisions of the federal courts are conclusive and binding upon all state courts." (*Keiper, supra,* 134 Cal.App.2d at pp. 706–707.) The federal cases Keiper cited for this principle, however, do not support the proposition that federal decisions are binding on us, but instead state merely FELA was not intended to govern the rules of evidence (*Atlantic Coast Line Railway Co. v. Dixon* (5th Cir. 1953) 207 F.2d 899, 903); substantive issues under FELA are federal questions to be determined by federal rather than state law (*Dice v. Akron, C. & Y. R. Co.* (1952) 342 U.S. 359, 361 [96 L.Ed. 398, 72 S.Ct. 312, 63 OhioLawAbs. 161]); the rights created under FELA "are federal rights protected by federal rather than local rules of law" (*Bailey v. Central Vermont Ry. Co.* (1943) 319 U.S. 350, 352 [87 L.Ed. 1444, 63 S.Ct. 1062]); and both the Jones Act and FELA, which is incorporated by reference into the Jones Act, require uniform interpretation throughout the country, and a state court trying a maritime case is bound to proceed so to protect the substantial rights of the parties under controlling federal law (*Garrett v. Moore-McCormack Co.* (1942) 317 U.S. 239, 244 [87 L.Ed. 239, 63 S.Ct. 246]). We adhere, instead, to "the prevailing view" that we are empowered to make an independent determination of federal law where lower federal court precedents are divided. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 506, pp. 569–570.)

■ BNSF contends the broad, unlimited language of FRSA's preemption provision is properly read to support both preemption of covered state law claims and preclusion of FELA negligence claims. BNSF asserts this conclusion is strengthened by Congress's 2007 decision to reenact verbatim section 20106(a)(1)'s preemption provision after numerous courts interpreted its language to preclude FELA claims.[11] BNSF argues, citing *Lorillard v. Pons* (1978) 434 U.S. 575, 580 [55 L.Ed.2d 40, 98 S.Ct. 866] (*Lorillard*), that by reenacting section 20106(a)(1) verbatim, Congress intended to adopt the judicial interpretation that this provision both preempts covered state law claims and precludes covered FELA claims, because "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . ."

The 2007 amendment added subdivision (b) to section 20106, to clarify that nothing in FRSA "shall be construed to preempt an action under State law seeking damages for personal injury, death or property damage," where certain enumerated allegations are made. (*Grade v. BNSF Railway Co.* (8th Cir. 2012) 676 F.3d 680, 684–685 (*Grade*); § 20106(b).) The subdivision was added in response to a group of cases arising out of a 2006 train derailment in North Dakota which released hundreds of gallons of toxic gas into the air, injuring many people, in which federal courts found FRSA completely preempted the plaintiffs' state causes of action. (*Grade, supra*, 676 F.3d at pp. 684–685.) As the court in *Grade* explained, the legislative history of the 2007 amendment indicates it was intended to clarify the preemptive effect of FRSA, not to change it. (*Grade, supra*, 676 F.3d at pp. 685–686.)

■ While in enacting section 20106(b) Congress reenacted the preemption provision of subdivision (a) verbatim, BNSF does not point to anything in the legislative history to show that Congress was aware of the judicial interpretations of subdivision (a). "The reenactment doctrine . . . tends to be applied when there is reason, either based on the nature of the regulatory interpretations or the context of the reenactment, to presume that Congress was aware of the interpretation that it was supposedly adopting." (*Fortis,*

---

[11] Prior to 2007, former section 20106 read as follows: "§20106. National uniformity of regulation. [¶] Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—[¶] (1) is necessary to eliminate or reduce an essentially local safety hazard; [¶] (2) is not incompatible with a law, regulation, or order of the United States Government; and [¶] (3) does not unreasonably burden interstate commerce." The 2007 amendment reenacted the first sentence verbatim as subdivision (a)(1). (§20106(a)(1).)

*Inc. v. U.S.* (S.D.N.Y. 2004) 420 F.Supp.2d 166, 179, 180 [explaining that in *Lorillard,* the Supreme Court "specifically noted that the judicial interpretations underlying the issue were 'well established' and that 'Congress exhibited both a detailed knowledge of the [relevant] provisions and their judicial interpretation' "].)[12]

When Congress enacted FRSA in 1970, FELA had been in existence for more than 60 years. (See FRSA, Pub.L. No. 91-458 (Oct. 16, 1970) 84 Stat. 971; FELA, 60 Cong., ch. 149 (Apr. 22, 1908) 35 Stat. 65.) Given that history, the absence of any provision in FRSA addressing its effect on FELA is significant. If Congress had concluded that FELA suits would interfere with the operation of FRSA, it could have enacted a provision addressing the issue during these statutes' 45 years of co-existence. (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at p. 2237].) In light of FRSA's failure to mention its effect on FELA, Congress could not have intended preclusion of FELA claims when that would harm FELA's purpose of promoting the safety of railroad workers by (1) leaving injured workers with no recourse against their employer when their claim is based on conduct they allege was negligent but which complies with FRSA and its regulations, and (2) insulating broad categories of potentially negligent conduct from any accountability.

██ In sum, in accordance with the Supreme Court's caution that FELA should not be "cut down 'by inference or implication,' " (*Cowden, supra,* 690 F.3d at p. 892, quoting *Urie, supra,* 337 U.S. at p. 186), its observation that Congress sometimes "permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important," and that "[p]re-emption of some state requirements does not suggest an intent to preclude federal claims" (*POM Wonderful, supra,* 573 U.S. at p. ___ [134 S.Ct. at pp. 2238–2240]), we conclude that FRSA and its regulations do not preclude any aspect of Fair's FELA claim. (*Henderson, supra,* 87 F.Supp.3d at p. 621.)

III.–VI.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[12] The legislative history of the 2007 amendment shows that Congress intended the entire section to address the preemption of state laws related to railroad safety and security by changing section 20106's title from "National Uniformity of Regulation" to "Preemption"; while subdivision (a) was restructured for clarification purposes, the restructuring was not intended to indicate any substantive change in the meaning of the provision. (H.R. Conf. Rep. No. 110-259, p. 351 (2007).)

[*]See footnote, *ante,* page 269.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Hill, P. J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 9, 2015, S228387. Werdegar, J., did not participate therein.