On Application for Rehearing
MURDOCK, Justice.
Norfolk Southern Railway Company (“Norfolk Southern”) has applied for a rehearing of our decision in Cottles v. Norfolk Southern Ry., 224 So.3d 572 (Ala. 2016), which reversed the Morgan Circuit Court's summary judgment in favor of Norfolk Southern in Jeff Cottles’s action under the Federal Employers’ Liability Act (“FELA”), 45 U.S.C. § 51 et seq., for injuries he sustained on April 9, 2012, while working as a track switchman for Norfolk Southern. In its application for rehearing, Norfolk Southern presents several arguments regarding the issue whether Federal Railroad Administration (“FRA”) regulations precluded Cottles’s claim under FELA.
First, Norfolk Southern asserts that we “improperly reversed the trial court [by] employing a rationale that had never been argued by the plaintiff, had not been briefed, and is based on a United States Supreme Court case which has nothing to do with railroads, the FRSA *593 [Federal Railroad Safety Act], FRA regulations, or the FELA.” In concluding on original submission that FRA regulations did not preclude Cottles’s FELA claim, we noted the United States Supreme Court’s discussion in POM Wonderful LLC v. Coca-Cola Co., 573 U.S. -, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014), of the differences between federal preemption of state laws by a federal statute and preclusion of claims based on one federal statute as a result of the subsequent enactment of another federal statute. We also quoted from several lower court opinions issued after POM Wonderful in which courts concluded that the principles discussed in POM Wonderful dictated that FRA regulations do not preclude FELA-based claims. See, e.g., Henderson v. National R.R. Passenger Corp., 87 F.Supp.3d 610 (S.D.N.Y. 2015); Noice v. BNSF Ry., 348 P.3d 1043, 1048 (N.M. Ct. App. 2015); Infermo v. New Jersey Transit Rail Operations, Inc. (No. 10-2498(SRC), Jan. 24, 2012) (D. N.J. 2012) (not selected for publication in F. Supp.); and Fair v. BNSF Ry., 238 Cal.App.4th 269, 189 Cal.Rptr.3d 150 (2015).
Norfolk Southern’s assertion that we made Cottles’s argument for him on original submission is incorrect. It is true that Cottles’s brief on original submission did not discuss federal statutory preclusion, or POM Wonderful, but Cottles was not required to do so. The federal-preclusion issue was first raised by Norfolk Southern in its appellee brief on original submission seeking to preserve the trial court’s judgment in its favor. As we noted in our opinion on original submission: “Norfolk Southern cites several federal cases, including Waymire v. Norfolk & Western R.R., 218 F.3d 773 (7th Cir. 2000), in support of its position” that the Federal Railroad Safety Act (“the FRSA”) and FRA regulations establish a different standard for railroad track safety that supplants the standard established by FELA. Cottles, 224 So. 3d at 587. But Norfolk Southern never raised this argument in its submissions to the trial court seeking a summary judgment, and the trial court never mentioned the statutory-preclusion issue in its judgment below. As the prevailing party in the trial court and the appellee in this Court, Norfolk Southern was, subject to due-process constraints, permitted to raise new arguments on appeal in support of affirming the trial court’s judgment. Having done so, it cannot then on rehearing complain when this Court chooses to address the new argument it raised.[1]
Likewise, Norfolk Southern cannot plausibly claim—as it purports to do in its rehearing brief—that this Court reversed the judgment of the trial court on a ground raised for the first time on appeal. Our opinion on original submission is abundantly clear that the trial court’s judgment was reversed because “a conflict of evidence exists as to whether Norfolk Southern should have conducted inspections in a manner that would have revealed the defect that caused Cottles’s injury,” Cottles, 224 So. 3d at 592, and therefore “Cottles presented substantial evidence creating a genuine issue of material fact as to whether Norfolk Southern negligently failed to provide him with a reasonably safe workplace” under FELA. Cottles, 224 So. 3d at 592. We did not reverse the trial court’s judgment because the trial court misapplied the doctrine of statutory preclusion; the trial court never discussed that issue. *594 We reversed the trial court’s judgment because it erred by improperly discounting or misunderstanding Joe Lydick’s testimony concerning the defective switch and in then concluding that Cottles had not presented substantial evidence of Norfolk Southern’s negligence. We addressed the preclusion issue only because Norfolk Southern presented it to this Court on appeal as an alternative ground for this Court to uphold the result reached by the trial court,
Norfolk Southern’s insinuation that this Court was off base in relying on the United States Supreme Court’s analysis in POM'Wonderful because, it says, that case “has nothing to do with railroads, the FRSA, FRA regulations, or the FELA” is misguided. It is true that POM Wonderful addressed the interplay of different federal statutes: namely, the Lanham Act (15 U.S.C. § 1125) and the Federal Food, Drug and Cosmetic Act (“the FDCA”) (12 U.S.C. §§ 331 and 343). It is also clear, however, that the argument presented by Coca-Cola (the defendant) in POM Wonderful exactly parallels Norfolk Southern’s preclusion argument in the present case: namely, that the plaintiffs claim under one federal statute (the Lanham Act) that Coca-Cola had deceptively labeled a product was precluded because food labels are regulated by the Food and Drug Administration pursuant to a different federal-statute (the FDCA), The United States Supreme Court rejected Coca-Cola’s preclusion argument and, in doing so, provided guideposts for determining when one federal statute precludes a claim under another federal statute. Specifically,- the POM Wonderful Court concluded that
“(1) there-was no- statutory text or established interpretive principle to support preclusion, (2) nothing relating-to either statute showed a congressional purpose or design to forbid such suits, and (3) to the contrary, the statutes complemented each other in the federal regulation-of misleading-food and beverage labels, (POM Wonderful, supra, 134 S.Ct. at p. 2233.).”
Fair, 238 Cal. App. 4th at 284, 189 Cal. Rptr. 3d at 161.
As we noted in our opinion on original submission, since POM Wonderful, was decided, courts.-that have addressed the issue, whether FELA claims are precluded by the FRSA have relied upon POM Wonderful’s analysis and have concluded that FELA claims are not precluded. We quoted and cited that opinion on- original submission. See also, e.g., Madden v. Anton Antonov & AV Transp., Inc., 156 F.Supp.3d 1011 (D. Neb. 2015); Hananburgh v. Metro-N. Commuter R.R., No. 13-CV-2799 (JMF) (S.D.N.Y. March 18, 2015) (not selected for publication, in F. Supp.); and Noice v. BNSF Ry., 383 P.3d 761 (N.M. 2016). See also Powell v. Union Pac. R.R., No. CIV. 2:09-01857 WBS CKD (E.D.Cal. May 2, 2013) (not selected for publication in F. Supp.). In contrast, Norfolk Southern has cited a single trial court order from .a Minnesota district court, Schendel v. Duluth, No. 69DUCV132319 (Minn. Dist. Ct. Sept. 29, 2014), which-it says “applied] FRSA preclusion - in -a FELA case after the POM Wonderful decision.” Both the-weight of authority and logic favor the conclusion that Cottles’s FELA claim is not precluded,
Norfolk Southern tries to distinguish the analysis in POM Wonderful by noting differences between the statutory schemes at issue in that case and those in this case. But the criteria highlighted in POM Wonderful, as t succinctly summarized in the passage from Fair quoted above, hold true in the interaction between FELA and the FRSA.
First, and most importantly, as noted in Hananburgh:
*595 “The FRSA contains no ‘clearly' expressed congressional intention’ to preclude FELA claims. As noted, the statute does contain an express preemption clause, but that clause does not suffice, because ‘[f]or purposes of deciding whether [a federal statute with an express pre-emption clause] displaces a regulatory or liability scheme in another statute, it makes a substantial difference whether that other statute is state or federal.’ POM Wonderful LLC v. Coca-Cola Co., 573 U.S. -, 134 S.Ct. 2228, 2238, 189 L.Ed.2d 141 (2014). In fact, ‘[b]y taking care to mandate express pre-emption of some state laws, Congress if anything indicated it did not intend [the FRSA] to preclude requirements arising from other sources,’ such as other federal statutes. Id.”
Norfolk Southern attempts, as it did on original submission, to overcome the FRSA’s lack of any statement or intention to preclude other federal statutes by observing that the FRSA states that “[l]aws, regulations, and orders related to railroad safety ... shall be nationally uniform to the extent practicable.” 49 U.S.C. § 20106(a)(1) (emphasis added). It faults this Court for “failing] to cite dr take into account Congress’s- statutory provision that regulations issued by the Secretary [of Transportation] (including the Track Safety Standards) establish ‘the federal standard of care’ under which railroads are required to conduct their operations. 49 U.S.C. 20106(b)(1)(A) (emphasis added).”
Both of the above-quoted statements from the FRSA come from the section that expressly concerns preemption of state laws. As the United States Supreme Court noted in POM Wonderful, however, “[p]re-emption of some state requirements does not suggest an intent to preclude federal claims.” POM Wonderful, 573 U.S. at -, 134 S.Ct. at 2238. What was true in that case is also true here: “[T]he pre-emption provision by its plain terms applies only to certain state-law requirements, not to federal law.” 573 U.S. at -, 134 S.Ct. at 2239, Moreover, focusing on the FRSA’s preemption provision . misses the primary purpose. of the statute. “[T]he principal purpose of the FRSA is to promote railroad safety, not to achieve nationally. uniform railroad safety laws.” Henderson, 87 F.Supp.3d at 617. Viewed in this light, a finding against preclusion actually enhances the FRSA’s purpose. .
“FRSA was not created to provide uniformity for the sake of uniformity. The statute’s stated purpose is to enhance railroad safety and reduce accidents. 49 U.S.C. § 20101. And allowing safety related suits under FELA will enhance, rather than impede, that purpose, FRSA regulations provide comprehensive minimum safety -standards that apply to a broad range of situations. However, a railroad’s conduct may comply with those standards, yet still fall below the level of ordinary care expected of any reasonable person. And at least as to railroad employees, FELA suits serve to ferret out such situations that might otherwise evade the attention of regulators or that are less amenable to uniform, regulatory solutions. This enhances safety by providing additional incentives for railroads to conduct their operations safely.”
Madden, 156 F. Supp. 3d at 1020-21.[2]
Finally, Norfolk Southern faults this Court for failing to follow—or even to *596 cite—its decision in Norfolk Southern Ry. v. Denson, 774 So.2d 549, 551 (Ala. 2000). Denson concerned a railway accident in which a Norfolk Southern locomotive operated by engineer James Martin and conductor Vernon Denson collided with a tractor-trailer truck that had attempted to cross the railroad tracks in front of the locomotive. The collision produced extensive fire, which entered the cab of the locomotive, and Martin and Denson were severely burned. The plaintiffs’ theory was that because the locomotive was ’not air conditioned, they had the windows down, and, because the windows were down, the flames from the collision burned the plaintiffs. Martin and Denson asserted a claim under FELA alleging that Norfolk Southern had failed to provide them with a safe place to work because the locomotive they operated was not air conditioned.
The trial court denied Norfolk Southern’s motion for a judgment as a matter of law concerning this claim, and the jury returned substantial, verdicts in favor of Martin and Denson. Norfolk Southern argued to this Court that the plaintiffs’ FELA claim could not be sustained because FRA regulations did not require air conditioning in the cabs of locomotives. This Court agreed with Norfolk Southern:
“It would be inconsistent with the sense of the FRA as to its jurisdiction to hold that the judiciary could supersede the FRA’s regulations by requiring common carriers to equip their locomotives with air conditioning. Whether the impetus for change comes through another federal agency, such as OSHA, or through the judiciary’s construing the FELA, the impetus constitutes an intrusion into the FRA’s regulatory authority.
*597 “Moreover, the plaintiffs have cited no cases holding that the FELA requires railroads to equip their locomotives with air conditioning and we are not convinced that such a requirement would be adopted by jurisdictions universally, and we question whether it would be the proper role of the judiciary to adopt or impose such a requirement.”
Denson, 774 So.2d at 556.
Norfolk Southern contends that Denson controls the outcome in this case. There are at least two problems with that contention. First, Denson was decided well before POM Wonderful and the cases that have been decided in its wake that have concluded that FELA claims are not precluded by the FRSA. Second, Denson did not consider the differences between the preemption doctrine and preclusion that the POM Wonderful Court addressed in detail. For example, the Denson opinion stated:
“It is essentially undisputed that if these claims were based on state law, they would be preempted by the [Federal Locomotive Inspection Act] and the FRSA. The plaintiffs remind us that this is an action based on federal—not state—law. Thus, they contend, the doctrine of preemption is inapposite. We disagree with that contention. The practical effect of such a rule would be identical whether the rule is based on a state statute or on this Court’s interpretation of federal law. Indeed, the need for uniformity, which is one of the bases of preemption, has been addressed by the Federal Railroad Administrator (‘the Administrator’) in a context analogous to the one before us.”
774 So.2d at 555. As already noted, the POM Wonderful Court made it clear that “[p]re-emption of some state requirements does not suggest an intent to preclude federal claims.” 573 U.S. at -, 134 S.Ct. at 2238. That Court further rejected the idea that a federal statutory scheme which states that it seeks to achieve uniformity automatically precludes regulation from other sources of federal law and held that a finding of preclusion is particularly unwarranted if there is no hint of a congressional intent to have one federal statute preclude claims authorized by another federal statute. In short, the Denson Court’s analysis simply does not address the differences between preemption and preclusion articulated by the United States Supreme Court in POM Wonderful.
Conclusion
On original submission, we held that Cottles presented substantial evidence of Norfolk Southern’s negligence through the testimony of his expert, Joe Lydick,- concerning what Norfolk Southern should have done to inspect the defective switch. Norfolk Southern fails to offer any direct attack on this conclusion. Instead, it relies upon the idea that Lydick’s testimony is irrelevant because FRA regulations do not require Norfolk Southern to perform track-switch inspections the way Lydick stated it should have in this instance. In essence, Norfolk Southern's application for rehearing turns on whether the FRSA precludes claims arising under FELA. Because Norfolk Southern’s arguments concerning preclusion are not well founded, its application for rehearing is overruled.
APPLICATION OVERRULED.
Parker and Main, JJ., concur.
Bolin and Bryan, JJ., concur in the result.
Wise, J., recuses herself.

. See, e.g., Smith v. Mark Dodge, Inc., 934 So. 2d 375, 380 (Ala. 2006) (noting that “this Court will affirm a judgment for any reason supported by the record that satisfies the requirements of due process”), In his brief on rehearing, Cottles does not contend that Norfolk Southern’s raising of this new argument on appeal implicates the aforesaid due-process constraint but instead confronts the issue on its merits. We choose to do the same.

. See also Noice v. BNSF Ry., 383 P.3d 761, 771 (N.M. 2016):
“Rather than being in irreconcilable conflict, we conclude that FRSA and FELA are *596 complementary in purpose and effect. Both statutes further railroad safety in meaningfully distinct ways. See Henderson, 87 F.Supp.3d at 621 (‘[T]he FELA and the FRSA complement each other in significant respects, in that each statute is designed to accomplish the same goal of enhancing railroad safety through different means.’). FRSA seeks to enhance safety in every area of railroad' operation, and to protect the public as well as railroad workers. See 49 U.S.C. § 20101. It does so with national, comprehensive regulatory standards which áre enforced by government entities. FELA, by comparison, focuses solely on the safety of railroad workers, and does so by providing railroad employees a private right of action. Cf. POM Wonderful, [573] U.S. [at] -, 134 S.Ct. at 2236-38 (concluding that specific regulations regarding juice labeling promulgated under the Federal Food, Drug, and Cosmetic Act did not preclude the plaintiff’s Lanham Act claim which asserted that the plaintiff’s market competitor mislabeled its juice product and emphasizing the two statutes different enforcement mechanisms as one of the grounds for denying preclusion).
"Permitting FELA claims like the Estate's to proceed is likely to enhance the overall safety of railroad operation. Fair v. BNSF Ry. Co., 238 Cal.App.4th 269, 189 Cal.Rptr.3d 150, 160-61 (2015), cert. denied, [577] U.S. -, 136 S.Ct. 1378, 194 L.Ed.2d 361 (2016) ('Allowing safety-related suits under FELA will enhance FRSA’s stated purpose of promoting railroad safety and reducing accidents.’). In addition, FELA claims may shed light upon potentially dangerous circumstances that regulators might otherwise not identify or that are less amenable to uniform, regulatory solutions. See Jerry J. Phillips, An Evaluation of the Federal Employers' Liability Act, 25 San Diego L. Rev. 49, 54 (1988) (‘The fault-based FELA system, with its compensation exceeding the typical workers’ compensation award (particularly for the more serious injuries), is designed to serve as a real and present safety incentive.’). In sum, we conclude that what the Supreme Court said in POM Wonderful is directly applicable here: allowing FELA suits like the Estate’s to proceed 'takes advantage of synergies among multiple methods of regulation’ and is ‘consistent with the congressional design to enact two different statutes, each with its own mechanisms to enhance’ railroad safety. [573] U.S. [at] -, 134 S.Ct. at 2239.”